29   817|
45   281|

## No. 6589.

### JAMES J. O'HARA vs. MRS. E. BOOTH AND NICHOLAS CONNELL.

When an owner of property within this State, who is absent from the State, is sued, in a court, within whose jurisdiction the property is situated, he may be brought into court and have a judgment *in rem* rendered against him, either by attaching the property, or by having a curator *ad hoc* appointed to represent him.   Service of citation on such curator is sufficient.

The purchaser of unmortgaged property, sold under the decree of a court of competent jurisdiction, rendered in a suit where the proper parties were duly represented, can not have his title to the property assailed in any collateral manner; or, on the ground of irregularities in the legal proceedings which only the defendant in the proceedings could plead.

The adjudication of property sold under execution, at the suit of a privilege creditor, for a price less than the amount of a *prior* privilege is utterly void.

Seizure of property under the execution of a valid judgment, gives a lien on the property, superior to any privilege recorded against it subsequent to the seizure.

APPEAL from the Fourth District Court, parish of Orleans.   *Lynch,* J.

*Hornor & Benedict,* for plaintiff and appellee.

*T. Gilmore & Sons,* for Connell.

The opinion of the court was delivered by

DEBLANC, J.   The defendant, Sarah E. Booth, was the owner of the square of ground bounded by Liberty, Howard, Washington and Fourth streets, in the city of New Orleans.

Nicholas Connell, as transferee of one J. Fallon, and O'Hara, the plaintiff, were both creditors of Mrs. Booth for the cost of laying sidewalks, curbs and gutters, under contracts with the city—Fallon on Liberty street, O'Hara on Howard street.

52

818      SUPREME COURT OF LOUISIANA,

O'Hara vs. Mrs. E. Booth and Connell.

Fallon's privilege was recorded on the fourth of March 1872, O'Hara's on the ninth of March 1876.

Connell sued on the claim transferred to him by Fallon, and, on the tenth of May 1875, obtained judgment against Mrs. Booth for $669 71, with recognition of his privilege on the lot of ground above described.

On this judgment execution issued and was levied in July 1875. The property subject to Connell's privilege was seized, advertised for sale, and adjudicated to him for $1600, but on account of alleged informalities in the proceedings, said property was re-advertised, and, on the fifteenth of April 1876, re-adjudicated to Connell, for $300.

On the twenty-fifth of March 1876, O'Hara brought suit against Mrs. Booth and Connell, on his herein-mentioned claim, and, on the third of May, obtained judgment against Mrs. Booth alone, for $820 28, with recognition of his privilege. His demand against Connell was rejected.

It was after the first and before the second adjudication of the property to Connell, and while said property was under his, said Connell's seizure, that O'Hara's privilege was recorded and his judgment obtained.

O'Hara issued execution upon his judgment against Mrs. Booth, and caused to be seized, as belonging to her, the lot which, already, had been sold to Connell. The sale, under O'Hara's execution, took place on the fifth of August 1876, and, at that sale, the property twice before adjudicated to Connell, was purchased for $100 by A. Hero, Jr.

It was after this last adjudication, that O'Hara filed the rule in and by which Connell was called upon to show cause why the privilege securing the claim transferred to him by Fallon should not be cancelled. To this rule, Connell excepted on the grounds that such issues as it presented could not be tried during the court's vacation, and that his rights on the property could not thus be collaterally attacked.

In answer to these exceptions, O'Hara's counsel contend, in their printed argument—

1. That Fallon's privilege was not recorded at the date fixed by the 3274th article of the Civil Code, and that, under a decision of this court reported at page seven of the twenty-seventh Annual, he was not entitled to any privilege whatsoever.

2. That the judgment of Connell, as transferee of Fallon, is an absolute nullity, for the reason that, having no privilege, he had no right to proceed against Mrs. Booth, an absentee, by the appointment of a curator *ad hoc*.

3. That said curator was appointed without a previous citation to Mrs. Booth, before it had been shown that she was an absentee, and that he, said curator—though it does not appear that he was cited—answered Connell's demand by a general denial, upon which, on the tenth of May 1875, judgment was rendered against Mrs. Booth.

Fallon's claim against Mrs. Booth is not disputed; its rank alone is contested. That claim, its amount and its character are recognized by the judgment of a competent court—that judgment was executed in the presence of O'Hara; he protested, but irregularly, against the execution under which Connell acquired title to the property, on which they both allege and tacitly admit they had a privilege.

Could O'Hara, disregarding the title so acquired, proceed to seize and sell as still belonging to Mrs. Booth, the property which, to his knowledge, had passed from Mrs. Booth to Connell? He seems to think that he could. In this, he is mistaken. Mrs. Booth was absent from and owned property in the State; she was, beyond any doubt, indebted to Connell, and, when sued by the latter, was properly represented by a curator *ad hoc*, on whom, as such, citation was served on the first of April 1874.

There may be, in the proceedings which are the basis of Connell's title, a slight inobservance of the rigid course which should be pursued to bind absentees and justify the sale of their property; but, if they do exist, most of the irregularities complained of, considering the evidence now before us, would only authorize those defenses and actions personal to the absentee, and do not import that absolute nullity, which, to be pronounced by the court, needs but be referred to and suggested, and which, at any time and under all circumstances, may be urged by any interested party.

The curator *ad hoc* may seem to have been a little too hasty in filing his answer; unexplained, that haste may leave the impression that he acted before communicating with Mrs. Booth; but, had he corresponded with her, would she have imparted any information he had not, and would any additional information have changed the form and substance of the curator's answer? That is not probable. He may have had reasons to believe that, in the interest of the absentee, to avoid the useless expenses of a litigation which could be but uselessly prolonged, the immediate trial of a suit on an indisputable and undisputed claim was as proper as desirable. This did, nor could, in no way, expose or affect the rights of O'Hara.

Mrs. Booth might, with what result, we are not prepared to decide, assail as apparently irregular and suspicious two successive adjudications of her property to the same party, under the same execution; the first for sixteen hundred dollars, the last for only three hundred. That right, in a proper pleading and under proper allegations, her creditor might invoke and exercise; but he neither could, nor can, by mere suggestions in argument, ask of any court to ignore the existence of a title, derived from the execution of a judgment rendered after citation, the joining of issue, a trial, and the uncontradicted proof, if not of Connell's

claim and privilege, at least of the as yet undenied correctness of his claim.

Instead of contending for a preference over the price of either the first or the second sale, O'Hara has chosen to proceed directly against the property, as if it had neither been seized nor sold under Connell's execution; he has chosen to seize after an executed seizure, to sell after a previous sale, to acquire after the title thus acquired had, to his knowledge, passed from the seized debtor to one of her creditors—and, in its present form, his action can not prevail.

For at least two reasons, plaintiff's demand should be disallowed:

1. If, at the date of the sale made under his execution, the title to the property was in Mrs. Booth, Hero's bid of one hundred dollars was entirely insufficient to discharge the prior privileges and mortgages bearing on said property, and its adjudication at that price was absolutely void. C. P. 684.

2. Whether Fallon's transferred claim was or was not properly certified and recorded, Connell, by his seizure, which antedates the recording of the evidence of O'Hara's contract, was invested with a privilege which entitled him to be paid by preference to all other creditors of Mrs. Booth, out of the price of the property seized. C. P. 722; 27 An. 290.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be and it is hereby annulled, avoided and reversed, and plaintiff's rule dismissed at his costs in both courts.

---

ON APPLICATION FOR REHEARING.

The opinion of the court was delivered by

SPENCER, J.   Even if the plaintiff's rights are of the character represented by him, and even if the defendant Connell had no privilege, still we could give him no relief under the form of action pursued in this case.

If we treat and consider Connell's judgment as but an ordinary debt *without privilege*, still the seizure and sale of Mrs. Booth's property thereunder undoubtedly had the effect of transferring that property to him; and if it is true as asserted by plaintiff that he had thereon prior to the sale a valid and subsisting privilege, superior to any right of Connell, that privilege was not divested by the sale. We can not treat that sale as a nullity. The law is too plain for that. Where the sale of a debtor's property *is real* and not *simulated*, and where a creditor has not a privilege or mortgage containing the pact *de non alienando*, the creditor can not disregard the sale and seize the property. His only

O'Hara vs. Mrs. E. Booth and Connell.

remedy, if an ordinary creditor, is the regular *revocatory* action, with allegation and proof of the debtor's insolvency—if a mortgage or privileged creditor, he may proceed by *the hypothecary* action. Now it is not pretended that the rule in this case comes under either of these forms of action; and plaintiff must therefore fail, unless the judgment of Connell, and therefore the proceedings under it, were absolutely and radically null. The plaintiff contends that they were, first because Mrs. Booth was represented by a curator *ad hoc* upon mere allegation of her being an absentee; and second because, an absentee can only be brought into court by attachment or seizure of his property, if the seizing creditor has no privilege. It will be time enough to discuss the question whether Mrs. Booth was or was not an absentee, when Connell's judgment is attacked by her on that ground, or by her creditors, in a proper form of action. One thing is clear and that is, that if she was in point of fact an absentee, then the appointment of a curator *ad hoc* to represent her, could not be invalidated because made by the judge on insufficient proof or even without proof. We must presume that the judge did his duty, and we think this record shows that he did, for throughout this litigation she is treated as an absentee, even by the plaintiff himself. Nor is it true under the jurisprudence of this State as now settled, that an absentee owning property in this State can only be brought into court by the attachment or seizure of his property, when the creditor has no privilege.

The rule as now settled (and we believe correctly) is that, where an absentee owns property in this State, *any creditor* may bring him into court, *quoad* that property, by the appointment of a curator *ad hoc*, and that the judgment rendered contradictorily with the curator may be executed on that property. The judgment is good *in rem*, but not *in personam*. Of course it would have to appear in the pleadings and proof that the absentee owned property within the jurisdiction of the court.

In conclusion if Mrs. Booth was and is insolvent, and the judgment of Connell a fraud upon her other creditors, the revocatory action must be resorted to. If the complaining creditor has a mortgage or privilege upon the property alienated, he may resort to the hypothecary action. If the sale is a simulation, or if the creditor holds a mortgage or privilege under the pact *de non alienando*, he may disregard the sale and seize, but not otherwise. Plaintiff does not allege or pretend himself to be within these exceptions.

Rehearing is refused.