THE PEOPLE *ex rel.* Lou N. Bear, County Collector, Appellee, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed December 16, 1914.*

1. TAXES—*the county board may levy tax for State aid roads without a vote of the people.* Money for State aid roads may be raised by a levy of taxes for county purposes without any vote of the people, provided the aggregate of the levies for all county purposes, including the levy for State aid roads, does not exceed the constitutional limit of seventy-five cents on the $100.

2. SAME—*rule where the aggregate county tax exceeds the constitutional limit.* If the aggregate county tax, including that for State aid roads, will exceed seventy-five cents on the $100, the county board can submit to the people the proposition to levy an amount for State aid roads in excess of seventy-five cents on the $100, or, if it desires to raise the money by issuing bonds, it can submit the question of the bond issue to a vote of the people.

3. SAME—*effect if county board, after providing for fund, decides not to adopt selection of roads by State commission.* If the county board, after providing for raising the money for State aid roads by any of the methods authorized by law, decides not to adopt the selection of roads recommended by the State highway commission, the money so raised must be held as a separate fund for future expenditure for State aid roads whenever the roads are thereafter selected and agreed upon by the State highway commission and the county board.

4. SAME—*county board has reasonable discretion to arrange, in advance, for county expenses.* Taxes should not be levied simply to enrich the public treasury, but county boards have a reasonable discretion to arrange, in advance, for county expenses by levying taxes to raise the funds.

APPEAL from the County Court of Champaign county; the Hon. WILLIAM G. SPURGIN, Judge, presiding.

GREEN, JONES & PALMER, (JOHN G. DRENNAN, and ORIS BARTH, of counsel,) for appellant.

P. J. LUCEY, Attorney General, and THOS. E. DEMPCY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an application in the county court of Champaign county for judgment and order of sale against the Illinois Central Railroad Company for failure to pay that portion of the county tax levied for State aid roads. Appellant filed objections on the ground that the methods specified in the statute were not followed in levying said tax. The objections were overruled and judgment was entered. This appeal followed.

Counsel for appellant first urge that no valid tax could be levied for constructing State aid roads without first submitting the question of issuing bonds therefor to the legal voters of the county. We considered that question in *People* v. *Kankakee and Seneca Railroad Co.* 265 Ill. 497. For the reasons there given, the objections to this tax on that ground were properly overruled.

Counsel for appellant further object that no valid tax could be levied by the county board before the State aid roads of said county had been selected, plans, specifications and estimate of the cost thereof had been determined upon, the county superintendent of highways selected and other preliminary requisites of the statute complied with, and that

therefore the levy of the tax in question for State aid roads was premature.

The State Aid Roads act went into force July 1, 1913. August 27, 1913, the county clerk of Champaign county received from the State highway commission a communication purporting to show provisional allotments of State aid road funds by counties, and stating that the counties might avail themselves of their allotments by providing like amounts. At the September meeting of that year the board of supervisors of said county included in the tax levy for county purposes an item of $25,000 for State aid road fund, and notice of said levy was sent the State highway commission, thus accepting said allotment. The record shows that in November, 1913, the road and bridge committee of the board of supervisors forwarded to the State highway commission a map of the county, with the State aid roads indicated thereon which had been previously designated and approved by the county board, and that a county superintendent of highways for that county was appointed in accordance with the provisions of the act here under consideration. Later, the board of supervisors made its selection as to the State aid roads, which was agreed to by the State highway commission. In January, 1914, the State highway commission sent a notice to the county clerk of Champaign county containing certain blanks for acceptance of an allotment by the county. This letter and notice divided the allotment into two separate funds, the first of which ($9406) was stated to be available immediately, and the other allotment ($16,461) was to be available July 1, 1914. March 5, 1914, petitions were presented to the county board for the improvement of certain highways as State aid roads. At the March meeting of the board of supervisors of Champaign county a resolution was adopted accepting the State highway commission's allotment for the sums referred to and also designating the roads or highways to be improved. At the same meeting

the county board took action as to the character of the proposed improvements. In April the State highway commission sent a communication to the county board agreeing to the particular roads and highways formally selected by that board, and in June, 1914, mailed to the county board what they called the "final resolution of State highway department in regard to State aid roads in Champaign county." At the June meeting of the county board, and after the application for this judgment was filed, a resolution was adopted by the board appropriating $26,000 for work on State aid roads. At this same meeting the board adopted what it termed a "final resolution," in which were set out the routes and sections of the road to be improved.

We have stated the main dates and facts as to the communications between the State highway commission and the county board of Champaign county with reference to State aid roads in that county. They are sufficient to show clearly the basis of the objections made by appellant, that the requisite preliminary requirements had not been complied with before the levying of this tax.

All the sections of article 4 of the Road and Bridge act in force July 1, 1913, (Laws of 1913, p. 526,) must be read and considered in order to pass on this question understandingly. In a general way sections 9 to 15 of that article provide the method of designating public highways within the various counties which are to be State aid roads. Sections 15a to 15c, inclusive, describe the method and scheme for the allotments to the respective counties of the money of the State out of the appropriations made for that purpose and the method, manner and time of acceptance of said allotments by the respective counties. Sections 16 and 17 provide how State aid roads shall be designated and what part shall be first constructed and improved out of the first allotment of the State and appropriations by the respective counties, and section 18 and the concluding sections provide for the surveys by the State highway en-

gineer of the parts of State aid roads in a given county finally selected for improvement, the preparation of maps, plans, specifications and estimates, and the letting of contracts for such work. Of course, the above synopsis is not accurate in all respects, and the subjects considered in one subdivision may be referred to in the other subdivisions to a greater or less extent.

It is insisted by counsel for appellant that sections 15a to 15c, inclusive, follow in logical sequence sections 20, 21 and 22 of the act; that they are plainly amendments to the act as originally drafted and should properly have been designated as sections 22a to 22c, inclusive. There is nothing in this record or in the law itself that justifies this last conclusion.

Counsel argue that a reasonable and consistent construction of this act would be that by preliminary proceedings from twenty-five to forty per cent of the public highways of each particular county should be selected, designated and finally fixed upon as highways to be improved as State aid roads; that plans, specifications and estimates of cost of the proposed improvement of said highways should be fully completed and determined by the State highway commission and then accepted by the county boards of the respective counties, and that thereupon the proposition to improve such highways in the manner proposed should be submitted to the legal voters of the county where there were not sufficient funds in the county treasury available therefor; that the proposition submitted to the legal voters would be the general proposition of improving the designated highways in the manner determined upon, as State aid roads; that in the event the vote should be favorable upon the scheme adopted by the highway commission and the county board, then allotments would be made by the State highway commission from the appropriations of the legislature for this purpose, from time to time, for the improvement of such highways as should be

fixed by final resolution of the highway commission and the county board, and that bonds be issued and taxes levied to pay for the same, to provide a fund with which the county could carry out its part of the scheme. We do not think this would be a consistent or reasonable construction of the act. Under such construction it would be impossible to have any allotment of State aid money to the various counties or do any work for the first year after this act was passed, and possibly for several years thereafter. Various provisions of said article 4 indicate that no such delay was intended by the legislature.

In this connection counsel for appellant argue that the allotment made by the State highway commission in August, 1913, was provisional, only, and that the acceptance by the various counties referred to in sections 15a, 15b and 15c means the acceptance of the final allotment. A reading of the act will show that this argument is without merit. The first allotment is clearly preliminary, in a certain sense, because it is provided in section 15b that if any of the counties fail to accept such allotment the amount so allotted to such counties shall be re-allotted to the other counties that have complied with the provisions of the law. The acceptance by each county of the allotment was clearly intended to be the acceptance of the first allotment, and not of that finally allowed to each county if a re-allotment was required because certain counties had failed to comply. The allotment made by the State highway commission in August, 1913, was treated by the State highway commission and the county board of Champaign county as the one that was to be accepted by the county board.

The principal ground for the construction contended for by appellant is found in the wording of section 22 of article 4 of said Road and Bridge act. A reading of that section in connection with section 15c and the other sections of said article 4 demonstrates beyond question that the construction so urged is incorrect. The words "pro-

posed improvement," in section 22, fairly construed, refer to improvements mentioned and considered in sections 20, 21 and 22, and not to the improvements referred to in other sections of the act before the improvements have been finally decided upon. After State aid roads have been designated as provided by sections 9 to 15, inclusive, and the allotment of State aid money announced and accepted by the various counties, the county board of any given county so accepting may then pass a resolution stating that the public interest demands the improvement of a certain highway to be constructed as provided in said article 4. The county clerk will then transmit, as was done here, a copy of said resolution to the State highway commission. It will thereafter be passed upon. If approved, and such approval is certified to the proper county board, then, after all this preliminary work is done, the State engineer will survey the roads and make maps, plans and estimate of cost, pursuant to section 18, and report the same to the highway commission and transmit a copy to the county board, pursuant to section 20. Then comes the final resolution by the State highway commission and transmission of a copy thereof to the county board, as required by section 21. But the county board is not required to accept, even then, the State highway commission's allotment, and after an examination of the surveys, maps, plans and specifications it may refuse to go on with the work, but if the county board still desires to proceed with the proposed improvement, it may at any regular or special meeting, as provided for under section 22, authorize the proceedings necessary to enable the county to contribute one-half of the necessary cost.

Reading the entire act together, especially sections 15c and 22, we are of the opinion that the money for these State aid roads may be raised by a levy of taxes for county purposes without any vote of the people, provided the aggregate of the levies for all county purposes, including that

for State aid roads, does not exceed the constitutional limit of seventy-five cents on the $100. In case the aggregate does exceed this, then the county board can submit the proposition to the people of levying an amount for State aid roads in excess of seventy-five cents, under section 27 of chapter 34 of our statutes, (Hurd's Stat. 1913, p. 639,) or if the county board desires to raise this money, not by a direct tax all at once but by issuing bonds, it can submit that question under section 28 of said chapter 34, as was evidently intended by sections 15c and 22 of said article 4 of the Road and Bridge act. Under any of these methods, either with or without the vote of the people, if thereafter the county board decides not to adopt the selection of roads recommended by the State highway commission, the money so raised by taxation must be held, under section 23 of this act, as a separate fund for future expenditure for State aid roads and for no other purpose. When roads are thereafter selected and agreed upon both by the State highway commission and the county board, this money theretofore collected could be used for that purpose without levying other taxes.

Counsel for appellant argue earnestly and at length as to the evils that will come from putting this construction upon the statute, insisting that if the construction contended for by them is not the correct one the property owners will not have any means of knowing what roads were to be improved before they paid their taxes, and further insisting that large sums of money might thus be collected in advance from the property owners, great injustice thereby being done. If the construction asked for by counsel for appellant be put upon this act the property owners would not thereby gain any greater rights to object to the tax than they have under the construction put upon the act in this opinion. Taxing laws, as well as other laws, should receive a reasonable and practical construction. Taxes should not be levied simply to enrich the public treasury.

The unnecessary accumulation of money therein is unjust to the people, depriving them of the use of the money for a considerable period, and is also unwise, as it may tempt those having the custody of the funds to use them improperly. (Cooley on Taxation,—3d ed.—13.) But the county authorities must have a reasonable discretion in arranging in advance for necessary taxes for the payment of the county expenses. If they clearly abuse this discretionary power and raise taxes faster than they are likely to be needed the courts will interfere. (*People* v. *Atchison, Topeka and Santa Fe Railway Co.* 261 Ill. 33.) We do not believe the construction we have placed on this statute will result in any such evils as are feared by counsel for appellant. In any event, we think the construction given is clearly in accordance with the legislative intent, and therefore, if such evils do arise, the remedy rests with the legislature and not with the courts.

The judgment of the county court will be affirmed.

*Judgment affirmed.*