(No. 11138.—Reversed in part and remanded.)
THE PEOPLE *ex rel.* Henry Stuckart, County Collector, Appellee, *vs.* THE N. J. SANDBERG COMPANY, Appellant.

*Opinion filed February 21, 1917—Rehearing denied April 17, 1917.*

1. TAXES—*courts will not lightly interfere with the estimate of amount of taxes needed.* Public authorities must use sound business judgment in estimating the amount of taxes required each year and should provide enough money in the treasury to meet all claims, and the courts will not interfere with the decision of the public authorities in such matter except to prevent a clear abuse of discretion.

2. SAME—*public officials are presumed to have properly discharged their duties in levying a tax.* The presumption is that all public officials having connection with taxes have properly discharged their duties as to levying them, and this presumption can be overcome only by clear testimony.

3. SAME—*tax-payer cannot refuse to pay his taxes unless the estimate is so excessive as to show fraud.* The mere circumstance that in estimating in advance the amount that may be necessary for any purpose a larger amount is levied than is actually required does not render the tax invalid, unless the amount levied is so grossly excessive as to show a fraudulent purpose in making levy.

4. SAME—*examination of witnesses on question of an excessive tax should not be unduly restricted.* Objections in tax matters are heard summarily, but the trial court should permit a wide latitude in examining a public official called by the objector to testify with reference to the manner of levying or collecting taxes in order to ascertain whether the proper amount levied for loss and cost of collecting bonds is proper, judged by experience in past years, and whether it has been fixed in good faith.

5. SAME—*rule where tax for loss and cost of collecting bonds exceeds outlay.* If the amount raised by taxation for loss and cost of collecting bonds exceeds the amount actually expended for that purpose during the year the excess should be kept separate and paid out by the county authorities, not for general expenses of the county but for the loss and cost of collecting bonds as it may be needed in the future.

6. Other questions in the case are controlled by the decisions in *People* v. *Day,* (*ante,* p. 543,) and *People* v. *Huey,* (*ante,* p. 561.)

APPEAL from the County Court of Cook county; the Hon. JOHN H. WILLIAMS, Judge, presiding.

BRUNDAGE, LANDON & HOLT, (ROBERT N. HOLT, of counsel,) for appellant.

MACLAY HOYNE, State's Attorney, (SAMUEL A. ETTELSON, Corporation Counsel, CHARLES CENTER CASE, JR., FELSENTHAL & WILSON, WILLIAM F. STRUCKMANN, EDMUND D. ADCOCK, ROSS C. HALL, WALTER E. BEEBE, LEON HORNSTEIN, and JOSEPH F. GROSSMAN, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal of the N. J. Sandberg Company from the judgment of the county court of Cook county rendered on the hearing of the county collector's application for judgment against its property for the 1915 taxes.

The objections to the taxes in this case are, in the main, the same as those urged in *People* v. *Day,* (*ante,* p. 543,) and *People* v. *Huey,* (*ante,* p. 561.) What is said in the opinions in those cases must control on the questions there decided which are also involved here.

Counsel for appellant, however, have raised one point in this case not urged in either of those cases. They insist that the county court erred in holding that the county clerk could add to the item of the tax levy providing for the payment of county bonds, ten per cent of the amount of said item for loss and cost of collection. The amount given in the tax levy for the payment of bonds was $1,184,337.50, and ten per cent of this amounted to $118,433.75. They further contend that the county clerk wrongfully added ten per cent for loss and cost of collection of $90,000 worth of bonds of the class known as "Series N." Their argument is to the effect that the amount fixed by the county authorities thus to be levied for loss and cost of collection was based on a mere arbitrary percentage which the county clerk's office had adopted for a number of years past for estimating the loss and cost of collection; that as a matter of fact

the testimony of the witnesses and the documentary evidence offered showed that the amount necessary to meet the loss and cost of collection had been much less each former year than that estimated for the year in question. As nearly as we can figure from counsel's statement, they argue that the proof shows that the county has actually needed and used in years past, for loss and cost of collection in similar matters, about four per cent; that an allowance of ten per cent for that purpose is excessive; that this excess, on account of the large figures involved, amounts, of itself, to a large amount of money, and that this extra money, not being required for the payment of the bonds, has heretofore been added to the general taxes and spent for general county purposes, thus evading the so-called Juul law; that in addition to this excess raised directly, the adding of this extra amount to the taxes indirectly enables the county clerk, by a method of figuring, to raise some $112,163.19 more for general tax purposes than could be raised under the Juul law. Counsel for appellant further insist that as the evidence shows that said rate of ten per cent for loss and cost of collection of bonds is excessive and appellee did not show what was the proper rate per cent to add for this purpose, the objection to the whole amount should have been sustained. They also insist, in this connection, that the county court unduly restricted their examination of certain of the employees in the county clerk's office with reference to the amount needed in prior years for this purpose. Counsel for appellee argue that on the record before us it is shown that the county actually needed, on any fair estimate, judging by past experience, between seven and eight per cent for loss and cost of collection of said bonds.

We find ourselves unable to ascertain from the evidence in the record just what was actually needed for the purposes here in question. Much of the argument of counsel for appellant as to ten per cent being excessive seems to us to be based on statements made by the attorneys to the trial court

or in the briefs, rather than on the definite testimony of the witnesses. It is possible that the amount could be fig-. ured from the tables in the record by one familiar with the method of combining these figures, but such method is not clearly pointed out in any of the briefs or testimony in the record. Just what would be a reasonable amount to esti- mate for loss and cost of collection of bonds might vary for different years and under different circumstances. It is the duty of the public authorities to use sound business judg- ment on the question of estimating the amount of taxes required each year. They should endeavor to have in the treasury at all times enough money to meet all claims upon it, but sound public policy condemns exactions from the people, as taxes or otherwise, in advance of any needs of the government. The courts, however, will only interfere with the decision of the public authorities on these questions to prevent a clear abuse by such officials of their discretion- ary powers. (*People* v. *Atchison, Topeka and Santa Fe Railway Co.* 261 Ill. 33, and cases cited.) The burden rests upon the objector to sustain his objection to a tax. The presumption is that all public officials having connection with the taxes have properly discharged their proper duties as to levying the same. This presumption can only be over- come by clear testimony. (*People* v. *Atchison, Topeka and Santa Fe Railway Co.* 276 Ill. 208.) The mere circum- stance that in estimating in advance the amount that may be necessary for any purpose a larger amount is levied than that actually required is no reason why a tax-payer should refuse to pay his taxes, "unless the amount levied is so grossly excessive as to show a fraudulent purpose in mak- ing the levy." (*People* v. *Chicago and Alton Railroad Co.* 257 Ill. 208.) Objections in tax matters are heard sum- marily, but the trial court should permit a wide latitude in examining a public official called by the objector to testify with reference to the manner of levying or collecting taxes or to ascertain the proper amount to be estimated, judged

by experience in past years, or whether the amount has been fixed in good faith. The examination of witnesses on such questions should not be unduly restricted. · (*People* v. *Illinois Central Railroad Co.* 266 Ill. 636.) We think the examination of certain of the witnesses on this question was unduly restricted. For example, one of the employees in the county clerk's office was asked if from his examination into the question he had ascertained "what was the actual cost of collecting the taxes for the year 1914." Objection to this question was sustained. We think he should have been permitted to answer this question and other questions of like nature that bore on the amount required for loss and cost of collection of bonds in recent years.

When this case is re-docketed in the county court and taken up again for hearing, counsel for appellant will have the burden of proving, if they desire and still insist upon this point, that this ten per cent, in the light of the reasoning of the authorities heretofore cited, is an excessive amount for the purpose for which it is added. Then it will devolve upon appellee to show what amount is reasonable. The objection to such excess, if any excess is so shown, should be sustained by the county court. If there be any excess any year left over, such excess should be kept separate and paid out thereafter by the county authorities, not for the general expenses of the county but for the loss and cost of collecting bonds as it may be needed in the future.

· For the reasons given here and in the opinions in *People* v. *Day, supra,* and *People* v. *Huey, supra,* the judgment in this case is affirmed in part and reversed in part and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed in part and remanded.*