THE STATE at Relation and to Use of TOM K. JOHNSON, Collector of Revenue, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILROAD COMPANY.

Division One, July 30, 1926.

**1. TAXATION: Rate to Pay Debts.** The Constitution contains no express limitation on the rate of taxes that may be levied annually by the county court to pay a funding-bond indebtedness. The funding of a county indebtedness and the levying and collecting of taxes to pay the bonds issued pursuant thereto are governed exclusively by statute, and the only limitation imposed by the statute (Sec. 1045, R. S. 1919) as to the amount of the annual tax is that it shall be "sufficient to pay the annual interest on such bonds as it falls due, and a sufficient sinking fund for the payment of the principal of such bonds as they become due."

**2. ———: Advance Levy: To Pay Funding Bonds.** The order of the county court, made at the time of issuing funding bonds, levying an annual tax of twenty-five cents on each one hundred dollars of the assessed value of all taxable property in the county, "in order to meet the interest accruing on said bonds as the same becomes due, and to create a sinking fund for the payment of the principal thereof as said bonds become due and payable," is not an actual levy, and does not prevent the court in later years from levying fifty cents. A lawful levy of taxes can be made only upon an assessment, and a levy cannot be made until the assessment is extended against taxable property. The statute (Sec. 1045, R. S. 1919) does not require the county court to fix in advance an annual unchangeable rate of taxes to be collected annually during the life of the bonds. The statute is complied with when the court, at the time of issuing the bonds, makes an order that there shall be levied an annual tax "sufficient" to pay annual interest and the principal of the bonds as they become due.

**3. ———: Excessive: Discretion: Abuse: Fraud.** The county court is without power to levy a tax clearly in excess of what at the time can be reasonably anticipated as necessary to pay interest and principal of funding bonds. The authority to determine what amount will be necessary for that purpose is, however, vested in the county court, and unless there is a clear abuse of this discretionary authority, its levy cannot be interfered with; and to justify a holding that it has abused its discretion, the levy must have been so grossly excessive as to constitute, constructively at least, a fraud upon the taxpayers.

**4. ———: Excessive Levy: Immature Bonds.** Where the outstanding bonds amounted to $76,000, and the county at the time had $24,000 in bank to the credit of the bond fund, it will not be held that a levy of fifty cents on the taxable property of the county, which upon full collection would have produced $91,000, was excessive, although only $30,000 of the bonds had been called, and the remainder were not due for eight years and not even payable at the county's option for three years. The bonds must be paid sometime, and the court did not abuse its discretion in making a sufficient levy to put the county in a position to buy up the bonds before their

maturity and thereby entirely relieve the taxpayers of further interest payments.

5. ——— : ——— : **Subsequent Developments.** Whether the levy was so grossly excessive as to be fraudulent must be judged, not from the fact that it subsequently developed that a larger amount was levied than was actually required to pay all outstanding bonds, but from the entire situation which confronted the county court at the time the levy was made. And it devolves upon the objecting taxpayer to show the net amount of the tax which could reasonably have been expected to be realized from the levy at the time it was made; and where he makes no such showing, but causes the court to exclude evidence showing that the amount of the bond-fund on hand at the time the levy was made had been lost by the insolvency of the county depository, it cannot be held that the levy was so grossly excessive as to be fraudulent.

---

Corpus Juris-Cyc. References: **Counties,** 15 C. J., Section 348, p. 634, n. 57; Section 349, p. 635, n. 86; Section 350, p. 638, n. 4; Taxation, 37 Cyc., p. 1110, n. 70; p. 1119, n. 10.

Appeal from Cass Circuit Court.—*Hon. C. A. Calvird,* Judge.

REVERSED AND REMANDED.

*George R. Chamberlin* and *Allen Glenn & Son* for appellant.

(1) The occasions and mode of exercising the power of taxation are within the discretion of the law making authorities, which are here delegated to the county court, limited to the constitutional requirements. State ex rel. v. Springer 134 Mo. 212. (a) The question of what was a proper rate of tax to produce the amount required, is a matter which rests within the discretion of the county court, as it is by no means certain what the deficiencies in collection will amount to. Sec. 13030, R. S. 1919; People v. Wabash Ry. Co., 129 N. E. 826; People v. Sandberg Co., 115 N. E. 741, 118 N. E. 469; State ex rel. Kersey v. West. Union Tel. Co., 304 Mo. 207. (b) All right to tax is legislative, and this is delegated to the county court. Courts will not interfere with this unless manifestly abused. The constitutional questions raised in amended answer are also answered in the cases that follow: Keith v. Bingham, 100 Mo. 307; Heman v. Schulte, 166 Mo. 417; Moberly v. Hogan, 131 Mo. 19; State ex rel. v. Wheeler, 5 L. R. A. (N. S.) 1142; Bank v. Staats, 155 Mo. 55. (2) Legislature delegates power to county court to levy tax. In re Birmingham Dr. Dist., 274 Mo. 150; State ex rel. v. Burton, 266 Mo. 723. (a) The court cannot interfere with the rate of taxation which is levied by the Legislature, or agencies provided by the Legislature. State v. Wheeler, 5 L. R. A. (N. S.) 1142; State ex rel. v. Andree, 216 Mo. 617; State ex rel. v. Goodbar, 195 Mo. 561; State ex rel. v. Vaile, 122 Mo. 34; Decker v. Diemer, 229 Mo. 296. (b) Levy

of rate which would raise an excess is not lost to taxpayer, and the power to so levy is delegated by the Legislature to county courts. Baltimore Ry. Co. v. People, 66 N. E. 150; People v. C. B. & Q. Ry., 125 N. E. 314; People v. Sandberg Co., 115 N. E. 741; State ex rel. v. Ellison, 285 Mo. 301; Pope v. Lockhart, 299 Mo. 141.

E. T. Miller, A. P. Stewart, John H. Lucas, W. C. Lucas and D. C. Barnett for respondent.

(1) The court did not err in finding the issues for the respondent, both at law, and upon the evidence. No other finding could have been made. The levy was in excess of power and forbidden by the Constitution. Mo. Constitution, art. 10, sec. 11; art. 2, secs. 4, 10, 20 and 30; U. S. Constitution, amendments 5, 14. (2) Secs. 1042, 1043, 1044, 1045, chap. 8, art. 4, R. S. 1919, is the only authority for the funding and payment of this indebtedness. Section 1045 is a limitation and inhibition upon the county court, against a levy for any sum in excess of twenty-five cents on the $100 valuation. Jackson Lumber Co. v. McCrimmon, 164 Fed. 759; Railroad Tax Cases, 13 Fed. 750; Sanoma County Tax Cases, 13 Fed. 700; 37 Cyc. 966, 967, 970; State v. Wabash Railroad Co., 97 Mo. 296; Alexander v. Helber, 35 Mo. 334; City of Carondelet v. Picot, 38 Mo. 125; State v. Green, 87 Mo. 583. The amount necessary to pay and discharge the indebtedness did not exceed $45,595, with a levy of $91,190. An excess in 1920 of over $60,186.91, and all years to 1928, to pay the same. 2 Desty on "Taxation," p. 1194; 26 R. C. L. 28; 37 Cyc. 966, 967; State v. Wabash Railroad Co., 97 Mo. 296; Cornet v. St. Louis County, 240 S. W. 104; State ex rel. Hayes v. Snyder, 139 Mo. 549; State ex rel. Brumbaugh v. Railroad Co., 149 Mo. 645; State ex rel. Caldwell v. Railroad Co., 165 Mo. 611; State ex rel. Kolen v. Lesser, 141 S. W. 888; Kansas City v. Field, 285 Mo. 253; Alexander v. Helber, 35 Mo. 334; City of Carondelet v. Picot, 38 Mo. 125; State v. Green, 87 Mo. 583. (3) None of the authorities cited by the appellant herein are applicable to the law and facts herein. Sec. 13030, R. S. 1919, applies to general and not special taxes. (4) Sec. 13040, R. S. 1919, conclusively affirms the rule established in the instant case. Squaw Creek Drainage Dist. v. Harper, 213 Mo. 27; State ex rel. Blades v. Wabash Railroad Co., 251 Mo. 146; People ex rel. v. Ill. Cent. Ry. Co., 266 Ill. 636.

RAGLAND, P. J.—This is a suit to recover a special tax levied by the County Court of Cass County, in 1920, to pay the annual interest on a certain bonded indebtedness of that county and create a sinking fund for the payment of the principal when it became due. The bonds on account of which the tax was levied were issued

in full settlement and satisfaction of certain judgments which had been rendered against Cass County on bonds theretofore issued by it in aid of the Clinton and Kansas City Branch of the Tebo & Neosho Railroad. There were 390 of these funding bonds, all dated June 1, 1902; each was for the sum of $1,000 and each bore four per cent per annum interest from date, payable semi-annually. All were due and payable twenty years after date, but the county reserved the option of paying one-third of them at any time after five years from date, another third at any time after ten years from date and the remainder at any time after fifteen years from date. The bonds were issued pursuant to the provisions of what is now Article IV, Chapter 8, Revised Statutes 1919, and in due conformity therewith. At the time of their issuance the county court made and entered of record the following order:

"And it is further ordered by the court that in order to meet the interest accruing on said three hundred and ninety bonds, as the same become due, and to create a sinking fund for the payment of the principal thereof, as said bonds become due and payable, there is hereby levied and assessed an annual tax of twenty-five cents on each one hundred dollars assessed valuation of all the taxable property of said county."

At its May term, 1920, the county court levied a tax of fifty cents on the $100 valuation on all taxable property in the county to pay the interest on the funding bonds and create a sinking fund for their redemption at maturity. At that time there were $76,000 of the bonds outstanding, of which $30,000 had been called for payment. There was then a balance in the county treasury from previous levies belonging to the bonded-debt fund the sum of $23,686.17. The total assessed valuation on which the levy was made was $18,238,111. The total tax levied was therefore $91,190.55. The tax against defendant's railroad property under the levy was $2,306.41. Of this defendant paid, December 29, 1920, the sum of $1,522.23, which would have been the amount of the tax had it been levied at the rate of thirty-three cents on the $100 valuation. This suit is to recover the balance with interest and costs.

At the trial, in 1923, the defendant showed from the county records that the proceeds of the 1920 levy, together with the balance on hand at the time the levy was made, greatly exceeded the amount required to retire the outstanding bonds; that all of these bonds were either paid on presentation, or bought by the county on the open market, prior to August 1, 1922, at which time there remained in the bond fund a balance of approximately $39,000, which was turned over to the county's general revenue fund.

Plaintiff offered to show that at the time the levy was made the bank which was the county depository, and with which the bonded

315 Mo.—28.

debt fund had been deposited, had been closed and was in the hands of a receiver; that the conditions of the bank were such as to then indicate that its assets would not pay upon final liquidation as much as twenty-five cents on the dollar; and that the solvency of the sureties on the bond given by the bank to secure the county's funds was, or at that time appeared to be, wholly destroyed by the bank's failure. All of the evidence so proffered was rejected by the trial court, on defendant's objection.

The defenses pleaded and pressed in argument and brief are essentially these: (1) fifty cents on the $100 valuation, in addition to other county taxes which were levied, exceeded the maximum rate for county purposes as fixed by the Constitution; (2) the order of the county court, made at the time of their issuance, fixed the rate at which taxes were to be levied for the payment of the annual interest on the bonds and the creation of a sinking fund for their redemption when due; and (3) the levy was grossly excessive, and therefore violative of designated provisions of both State and Federal Constitutions.

From a judgment for defendant in the circuit court plaintiff prosecutes this appeal.

I. The Constitution contains no express limitation on the amount of taxes which may be levied annually to pay such a bonded indebtedness as was owing by Cass County in 1920. Section 11, Article X, in terms excepts from its operation taxes to pay valid indebtedness existing at the time of the adoption of the Constitution, or bonds which might thereafter be·issued in renewal of such indebtedness. The funding of such an indebtedness and the levying and collecting of taxes to pay the bonds issued pursuant thereto, are governed exclusively by Article IV, Chapter 8, Revised Statutes 1919. Section 1042 of that article provides that no such funding bonds shall be payable "in less than five nor more than·thirty years from the date thereof." And Section 1045 commands that any county issuing such bonds, "shall, at the time of issuing the same, provide in the express manner provided by law for ·the levy and collection of an annual tax sufficient to pay the annual interest on such funding bonds as it falls due, and a sufficient sinking fund for the payment of the principal of such bonds when they become due." The only limitation imposed by the statute as to the amount of the annual tax is contained in the language: "sufficient· to pay the annual interest on such funding bonds as it falls due, and a sufficient sinking fund for the payment of the principal of such bonds when they become due."

*Tax Limit.*

II. The order of the county court heretofore quoted, concluding, "there is hereby levied and assessed an annual tax of twenty-five cents on each one hundred dollars valuation of all the taxable property of said county," did not constitute an actual levy of taxes. The reasoning of the Supreme Court of Illinois in dealing with an analogous situation is just as applicable under our system of taxation as it was under theirs:

Advance Levy.

"There can be no lawful levy of a tax except upon an assessment, and under our system all assessments are made annually. How can a lawful levy of a tax be made in 1899 for a year ten years in the future? Admittedly the value of the taxable property of Alexander County for each of the years after 1899 is impossible of ascertainment now. Therefore the mere order of the county commissioners that a levy be made in those future years amounts to nothing as an actual levy of a tax. A tax cannot be said to be levied until it has been extended against assessed taxable property." [Hodges v. Crowley, 186 Ill. 1. c. 312.]

It could not have been the purpose of the Legislature in enacting Section 1045 to require the county court to fix in advance an annual *rate of taxation* which could not be changed during the life of the bonds, whether that was a period of five years or one of thirty. So many unknown factors are involved in every such situation that it could by no possibility be foreseen what annual rate throughout the entire period such bonds would run would yield an annual tax "sufficient to pay the annual interest . . . and a sufficient sinking fund for the payment of the principal . . . when they become due."

One of the dominant purposes of the Constitution of 1875 and of legislation immediately following its adoption, was to extricate the counties from the morass of debts in which most of them were involved, put them on a cash basis and keep them on it. Pursuant to that general purpose they were permitted to fund their old indebtedness, but were required at the time of doing so to provide ways and means for promptly liquidating it. The County Court of Cass County would have complied with both the letter and spirit of Section 1045 if at the time of issuing its funding bonds it had made an order that thereafter there should be levied upon all the taxable property of the county an annual tax "sufficient," etc. The order as made was not therefore a limitation on the power of future county courts to fix such a rate from time to time as would yield under existing conditions an annual tax conforming to the requirements of the statute.

III. Exactions from the people, as taxes or otherwise, in advance of any needs of the government are not only condemned by sound

public policy but are violative as well of fundamental rights guaranteed by our organic law. The County Court of Cass County was therefore without power to levy a tax clearly in excess of what could at the time have been reasonably anticipated as necessary to pay the interest and principal of the funding bonds. However, the authority to determine what amount would be necessary for that purpose was vested in it, and unless there was a clear abuse of this discretionary power, its action in the premises cannot be interfered with. In other words the amount levied must have been so grossly excessive as to constitute, constructively at least, a fraud upon the taxpayers. [St. Louis Electric Bridge Co. v. Koeln, *ante,* page 424; 3 Cooley on Taxation (4 Ed.) sec. 1031, p. 2088.]

"The presumption is that all public officials having connection with the taxes have properly discharged their proper duties as to levying the same. This presumption can only be overcome by clear testimony." [People v. Sandberg Co., 277 Ill. 567, 570.]

Respondent argues that the levy was excessive because only $30,000 of the bonds had been called and the remainder were not due for eight years thereafter, and not even payable at the county's option for more than three years after that time. But the bonds had to be paid sometime. If they could be bought up before maturity at such prices that the taxpayers would thereby be entirely relieved of further interest payments, why should it not be done? Private interests in the exercise of sound business judgment frequently follow that course with respect to their own bonded obligations. It certainly cannot be said that the county court in employing in the county's business a method that has long obtained in the industrial and commercial world abused the discretion with which it was invested.

It is pointed out, however, that with only $76,000 of the bonds outstanding and with a balance to the credit of the bonded debt fund of $24,000 in the county treasury, the court levied a tax of $91,000. These figures in connection with the additional fact that two years later, after all the bonds were taken up, there was a $39,000 surplus to turn into the general revenue fund of the county demonstrates beyond cavil, it is said, that the levy was grossly excessive. Whether, however, the levy was so excessive as to be constructively fraudulent must be judged not from the fact that it subsequently developed that a larger amount was levied than was actually required, but from the entire situation which confronted the county court at the time the levy was made. The amount required for the redemption of the bonds, principal and interest, as well as the amount that would be realized from the levy, had to some extent to be estimated in advance. In doing so it would be necessary to consider, among other things, the amount and availability of funds

already on hand, and the probable loss and the cost of collection of the tax to be levied. When a court is called upon to determine whether a given levy was so excessive as to be fraudulent, or the result of a gross abuse of discretion, not only should proof of such matters as these be received, but every existing fact and condition which the county court might have properly taken into consideration in fixing the amount is relevant and admissible in evidence. Defendant made no offer to show the net amount of the tax which could reasonably have been expected to be realized upon the levy at the time it was made. Not only that, but it caused the court to exclude the offer of plaintiff that the balance to the credit of the bonded debt fund appeared at the time to be wholly lost to the county. Of course facts which are required by law to be made a matter of record can be shown only by the record, but the evidence excluded by the trial court was not of that character.

The judgment of the circuit court is reversed and the cause remanded for further proceeding in harmony with the views herein expressed. All concur, except *Graves, J.,* absent.