Appellees, the Chicago and Alton Railroad Company and the receivers thereof, filed objections to certain items of tax levied and assessed against the property of the railroad company in the county of Sangamon. On hearing before the county court these objections were in part sustained. The People have appealed from the decision of the county court. Appellees have filed cross-errors, claiming that their objections should have been sustained in toto.
The tax objected to was what is commonly known as the State tax, consisting of five items: the general State tax, referred to in the statute as the revenue fund, the soldiers' compensation bonds, the State school fund, the waterway bonds and the University of Illinois. The rates of *Page 181 
taxation for these items as fixed by the State levy board were as follows: Revenue fund, 45 cents on each $100 valuation; soldiers' compensation bonds, 11 cents; State school fund, 19 2/3 cents; waterway bonds, 2 2/3 cents; University of Illinois, 6 2/3 cents, — making a total of 85 cents. The amount necessary to be raised in the revenue fund was $14,000,000; in the soldiers' compensation bonds, after deducting fund on hand December 1, 1925, $3,684,519; and in the State school fund, $8,000,000. As no complaint is made of the rate levied by the levy board for waterway bonds and University of Illinois, no further attention need be paid to those items.
The assessed valuation of the property within the State subject to tax was shown to be $4,194,769,417. The evidence and computation show that the rates necessary to produce the amounts of the various funds required are as follows: Revenue fund 33.38 cents; soldiers' bonus 9.15 cents; State school fund 19.07 cents, which, together with the waterway bonds and University of Illinois, plus .06 cents to make an even rate, results in a total necessary State tax rate of 71 cents, showing an excess amounting to 14 cents on each $100 assessed valuation. The county court sustained the objection as to 11 cents of the 14 cents and overruled the objection as to 3 cents.
Appellant contends, first, that the levy board is required to raise each year an amount sufficient to meet the amounts appropriated for or to be paid out during that year, and that in the performance of this duty said board is required to exercise its judgment in fixing a rate high enough to insure such amounts over and above loss and cost of collection, regardless of any back taxes collected. The legislature in 1925 passed an act providing that the revenue fund and school fund for the biennium be raised by levying a direct tax by valuation upon the assessed taxable property of the State, and directed that the Governor, the Auditor of Public Accounts and the State Treasurer, as the levy *Page 182 
board, "annually compute the several rates per cent required to produce not less than the above amounts," etc. The act further directed that the Auditor of Public Accounts certify to the county clerks of the various counties the proper rate for such levy and for other purposes for which State taxes are provided by law to be levied and collected. (Smith's Stat. 1925, chap. 120, secs. 415, 416.) Section 11 of chapter 126 1/2 (Ibid. p. 2418,) relates to the soldiers' compensation bonds, and provides that there shall be levied each year, and included in the tax levied for State purposes, such amount as shall be necessary and sufficient to pay the interest, annually, on the bonds issued under the provisions of that act and to pay and discharge the principal of such bonds at par value as they shall fall due, but that no such direct tax shall be levied for any year in which a sufficient amount of money from other sources of revenue has been appropriated and set apart to pay the interest and principal of such bonds. It was the duty of the levy board to fix a rate which would produce the various amounts required, and appellant contends that before the court will interfere with the discharge of this duty an objector must show, by a preponderance of the evidence, that the rates fixed by the board were so grossly excessive and unreasonable as to constitute fraud.
On the hearing the county court, over the objection of the People, permitted objectors to show the percentage of loss and cost of collection for the years 1919 to 1923, inclusive. The following table of such percentage was introduced in evidence: 1919, 3.43 per cent; 1920, 3.50 per cent; 1921, 4.81 per cent; 1922, 4.13 per cent; and 1923, 4.60 per cent. The average percentage of loss and cost for the five years was 4.09 per cent. The average percentage for the last three years of the five-year period was 4.51 per cent. The county court held the latter computation to be the proper percentage to allow for loss and cost of collection, and that when reduced to the rate of tax on the assessed *Page 183 
valuation of the property of the State it amounted to 3 cents for each $100 thereof, and the order overruled the objection to 3 cents of the 14 cents excess.
It has been many times held by this court that taxing authorities have power to make a reasonable allowance for loss and cost of collection and that they should use sound business judgment in estimating such allowance. Courts will not interefere with the exercise of sound business judgment on the part of such public authorities except to prevent an abuse of that discretion. People v. Chicago and Northwestern Railway Co.322 Ill. 150; People v. Wabash Railway Co. 296 id. 527; People
v. Chicago and Alton Railway Co. 289 id. 282;People v. Sandberg Co. 277 id. 567; Chicago and Alton RailroadCo. v. Baldridge, 177 id. 229; Edwards v. People, 88 id. 340.
Appellant contends that the holding in the above cases has been that there must be a showing of fraud in order to justify the court's interference with the levy made by public authorities. While it was said in People v. Sandberg Co. supra, that the fact that in estimating the amount necessary for any purpose a larger amount is levied than that actually needed is no reason why a tax-payer should refuse to pay his taxes unless the amount levied is so grossly excessive as to show a fraudulent purpose in making the levy, such language is not to be understood as requiring the showing of actual fraud, as the rule referred to in that case, and laid down in cases here cited and others, is, in effect, that the courts will interfere with the decision of public authorities to prevent a clear abuse by such officials of their discretionary powers. (People
v. Atchison, Topeka and Santa Fe Railway Co. 276 Ill. 208; Same
v. Same, 261 id. 33.) It is incumbent on the objector to show an abuse of discretion. What is such an abuse of discretion as to justify the interference of the court is a matter depending largely on the facts of each case. This court has always held that the levy of a tax to cover loss and cost *Page 184 
of collection must be small in proportion to the entire tax.People v. Chicago, Milwaukee and St. Paul Railway Co. 319 Ill. 415; People v. Wabash Railway Co. 314 id. 388; People v.Millard, 307 id. 556.
In the early case of Edwards v. People, supra, it was held that in the levy of a tax by the levy board it is proper that it take into consideration the past history of the State in the matter of losses and deductions which have occurred in the collection of the revenue and in the light of that experience exercise its best business judgment as to the rate necessary to produce the net amount required to be raised, and to fix such rate. Where the evidence clearly shows that public authorities have gone beyond the limits herein mentioned they will be held to have abused the discretion vested in them, and to the extent of such abuse the levy and rate fixed by them will be held invalid. In no sense is it to be considered that actual fraud has been committed or that the showing of actual fraud is necessary.
While appellees urge on cross-error that the levy board is a purely ministerial body, and cite in support of that contentionRamsey v. Hoeger, 76 Ill. 432, that case was overruled inEdwards v. People, supra, and the rule of the later case has since been adhered to, and we here re-affirm that decision.
The experience of the State in the last five years available at the time of this hearing, — i. e., from 1919 to 1923, — shows the average percentage of loss and cost of collection to be 4.09 per cent, while for the last three years the loss and cost amounted to 4.51 per cent. It was proper to be considered by the county court that these figures show a tendency, on the whole, to an increase in the per cent of loss and cost, and it was therefore right in adopting the average of the last three years shown. The amount required to be raised in the revenue fund was $14,000,000. The amount raised by a levy of 45 cents was $18,876,462.38, or an excess over and above the amount required of $4,876,462.38. *Page 185 
As to the soldiers' compensation bonds, the amount required to be raised was $3,684,519, and at the rate of 11 cents levied would produce $4,614,246.35, or an excess of $929,727.35. The total excess on these two items amounted to the very large sum of $5,796,187.73, or more than 25 per cent of the total amount required. Adding to the amount required for the revenue fund a sum equal to 4.51 per cent thereof, we find the total amount required to be raised for that fund to be $14,631,400. Of the amount necessary to be raised for soldiers' compensation bonds 4.51 per cent is $166,171.81, or a total to be raised for that fund of $3,850,690.81. The total necessary for the two funds, including loss and cost, is $18,482,090.81. The total in these two funds produced at the rate levied by the levy board would amount to $23,490,708.73, or an excess of $5,008,617.92 over and above the amount of the funds required plus 4.51 per cent for loss and cost of collection thereof. Considering the experience of the State in the matter of loss and cost in the collection of taxes, such levy is clearly an abuse of the discretion of the levy board.
Appellant contends, however, that the above figures are affected materially by taking into consideration the collection of back taxes, and that such is not contemplated by the statute in determining the amount of taxes necessary to be levied. There is but one thing to be considered by public officials in levying taxes, and that is, the matter of raising the amount of money necessary to meet the requirements of expenditure. If there be money on hand from collection of back taxes which belongs to a certain fund, as, for instance, the soldiers' compensation bond, interest, and retirement fund, that amount need not be raised by taxation, as it is already in the treasury. So with other funds. It is a matter of common knowledge that taxes are collected from time to time after the various periods of the year at which they are due to be turned over for the purposes for *Page 186 
which they were levied. Such taxes, when collected, are nevertheless available for later use in the various funds to which they belong and are to be considered in determining the amount necessary to be raised by the next levy. The purpose of the rule allowing a reasonable rate for loss and cost of collection is to insure that the amount actually needed for the purpose to which it is to be applied will be placed in the treasury. That rule does not afford justification for a rate of taxation clearly in excess of that necessary to produce the several amounts authorized by law to be expended.
The county court determined that 4.51 per cent of the amount required, when reduced to cents, amounted to 3 cents on each $100 valuation, and overruled the objection of appellees to that extent and sustained the same as to 11 cents. Appellant contends that such order is not enforcible; that it cannot be determined what distribution is to be made of this 11-cent reduction. We perceive no difficulty on the part of the public officials in applying this reduction, as it would naturally be applied to the three taxes objected to, — revenue fund, soldiers' compensation bond fund and school fund, — in the proportion which the excess in those various funds bore to the total excess. The 85 cents per $100 rate of taxation as State tax was certified by the State Auditor to the various county clerks not as one tax but as made up of several items, as to three of which the levies are shown to have been in various degrees excessive. The reduction, therefore, should be applied to those three funds accordingly.
The judgment of the county court was correct and will be affirmed.
Judgment affirmed. *Page 187