THE STATE at Relation and to Use of TOM K. JOHNSON, Treasurer and Ex-Officio Collector of Revenue of Cass County, Appellant, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY.—10 S. W. (2d) 918.

Division One, October 3, 1928.

36

*Thomas N. Haynes, Allen Glenn & Son* and *George R. Chamberlin* for appellant.

38

*E. L. Miller, L. E. Durham, Henry S. Conrad, D. C. Barnett* and *Hale Houts* for respondent.

LINDSAY, C.—This is a suit upon a tax bill to recover a balance alleged to be due from defendant under a levy, made in 1920, by the County Court of Cass County, of fifty cents on the $100 upon the assessed valuation of all property in said county, for interest and sinking fund purposes, on account of the bonded indebtedness then existing against said county.

In 1908 Cass County funded its then existing indebtedness, and issued bonds in the sum of $390,000, bearing four per cent interest. In May, 1920, the time when the general levy was made, there were outstanding and unpaid of said bonds, the sum of $76,000 of which, bonds in the sum of $30,000 had been called for payment. There was at that time a balance of $23,686.17 belonging to the bonded debt fund, remaining from previous levies; but this fund, with other county funds, had been on deposit with the Bank of Harrison-

ville, the county depository, which, about the first of February, 1920, had been taken in charge by the State Finance Department as an insolvent bank, and the fund was not then immediately available. The Bank of Harrisonville, the depository, had given a bond as such, with thirteen individuals as sureties. Through cooperation of the individual depositors of the failed bank, and the sureties upon the depository bond, there was a reorganization, and the incorporation of a new bank, the State Bank of Harrisonville, through which all the county deposit, including the bonded debt fund, was paid in full. In this transaction the sureties on the depository bond of the old bank raised and paid into the new bank the sum of $150,000. This transaction was completed, and the restoration of all the county moneys made complete on July 12, 1920. Afterward, on August 9, 1920, and after receipt of the certificate of the State Auditor showing action of the State Board of Assessment and Equalization, and as provided by Section 13030, Revised Statutes 1919, the county court made the levy of fifty cents on the $100 of assessed valuation upon the property of defendant, and other railroad companies. The total assessed valuation on which the levy was made, including defendant's property, was $18,238,111, and the total tax levied for bond purposes was therefore $91,190.55. Under that levy, the tax against defendant's property was $2306.41. On December 29, 1920, the defendant paid upon this tax the sum of $1522.23, which would have been the amount of defendant's tax had such tax been levied at the rate of thirty-three cents on the $100 valuation, the contention of defendant being that the tax resulting from a levy of thirty-three cents on the $100 for bond purposes, with the fund already on hand, would have been ample for the redemption of all the outstanding bonds.

The cause has been tried twice and this is the second appeal. Upon the first trial there was judgment in favor of the defendant. The determination of the issues presented upon that appeal may be seen in the former opinion, 315 Mo. 430. The cause was submitted upon the second trial upon the same pleadings as at the first trial. Upon the first trial, three defenses were made. The first was, that a levy of fifty cents on the $100, in addition to the other county taxes which were levied, exceeded the maximum rate as fixed by the Constitution. This defense was determined against the defendant. The next defense was that the county court, at the time of the issuance of said funding bonds, by its order, had fixed the rate of twenty-five cents as the rate at which taxes were to be levied for the payment of annual interest on the bonds, and the creation of a sinking fund for their redemption when due, and that therefore, no higher rate than twenty-five cents could be levied for such purposes. This defense was also determined against the defendant. The other defense made

was, that the levy of fifty cents on the $100 valuation was grossly excessive, and wholly unnecessary to pay off the amount of bonds then outstanding, and was an illegal and void levy.

Upon the rulings made in the first trial arising upon the last mentioned issue, the judgment was reversed, and the cause remanded. The correctness of the ruling in favor of defendant at the second trial, upon the defense last mentioned, is the issue presented upon this appeal. The evidence was that out of the proceeds of the levy in question, together with the balance on hand belonging to the fund at the time that levy was made, all of the outstanding bonds and accrued interest were paid, and that after such complete payment there remained in the said fund on August 1, 1922, the sum of approximately $39,000, which was transferred to the general revenue fund of the county by the county court. Upon that fact, and also upon the conditions existing at the time the levy in question was made, defendant bases its claim that such levy was unnecessary, illegal and void, at least as to the excess levied and demanded over the sum already paid by defendant.

The record made upon the first trial was put in evidence upon the second trial, but the evidence on the second trial of especial importance upon the only issue remaining, was the testimony taken showing the condition existing, and confronting the county court, at the time the levy was made. The trial court at the first trial rejected the plaintiff's offer to show by oral testimony that the bonded debt fund of the county, amounting at the time of the levy in question to about $23,000, appeared at that time to be lost to the county. The defendant at that trial made no offer to show the net amount of the tax which could have reasonably been expected to be realized upon the levy at the time it was made. These matters were gone into upon the second trial, and it is this evidence which is to be considered in view of the ruling of the trial court, and in accordance with the rulings made in the former appeal. In the first appeal it was held that the mere fact the county court made a levy, sufficient, not only to take up the $30,000 of bonds which had been called, but also the remaining bonds, although those remaining had not reached maturity, was not an abuse of discretion. In accordance with that ruling, the determination of the issues submitted on the second trial was made to turn upon the question whether the levy was illegal as being excessive. Under the former ruling and under the authorities generally, the determination of that issue depends not alone upon the fact that there remained a surplus of $39,000 as a result of developments subsequently appearing, but the conclusion is to be reached upon a consideration also of all the conditions which surrounded the county court at the time the levy was made. The rules of law to be borne in

mind in the determination of the essential issue, supported by the authorities generally, were briefly stated in the former opinion by RAGLAND, J.:

"Exactions from the people, as taxes or otherwise, in advance of any needs of the government are not only condemned by sound public policy, but are violative as well of fundamental rights guaranteed by our organic law. The County Court of Cass County was therefore without power to levy a tax clearly in excess of what could at the time have been reasonably anticipated as necessary to pay the interest and principal of the funding bonds. However, the authority to determine what amount would be necessary for that purpose was vested in it, and unless there was a clear abuse of this discretionary power, its action in the premises cannot be interfered with. In other words the amount levied must have been so grossly excessive as to constitute, constructively at least, a fraud upon the taxpayers. . . .

"Whether, however, the levy was so excessive as to be constructively fraudulent must be judged not from the fact that it subsequently developed that a larger amount was levied than was actually required, but from the entire situation which confronted the county court at the time the levy was made. The amount required for the redemption of the bonds, principal and interest, as well as the amount that would be realized from the levy, had to some extent to be estimated in advance. In doing so it would be necessary to consider, among other things, the amount and availability of funds, already on hand, and the probable loss and the cost of collection of the tax to be levied. When a court is called upon to determine whether a given levy was so excessive as to be fraudulent, or the result of a gross abuse of discretion, not only should proof of such matters as these be received, but every existing fact and condition which the county court might have properly taken into consideration in fixing the amount is relevant and admissible in evidence."

The plaintiff introduced evidence to the effect that after the failure of the depository bank in February, 1920, some of the sureties were denying the genuineness of their signatures to the bond. It appears that investigation of this was promptly made, and it was ascertained that the signatures were genuine, and it does not appear that any serious consideration was long given to the claim that any of the signatures were not genuine. It appears also that almost immediately after the failure of the bank, efforts were undertaken toward a reorganization under the supervision of the State Commissioner of Finance. These efforts, as have been stated, finally proved successful, and a new bank was incorporated and constituted the successor of the old depository, early in July. The evidence was that the sureties on the bond were financially responsible, and amply able to pay the

amount required to make good the deposits of the county; and, as heretofore stated, they did pay such an amount to the new bank as a part of the terms of its authorization to do business, and so as to completely restore all the county funds. The evidence also was to the effect that during the period when the plan of reorganization of the old bank or the organization of the new one was under way, the county court and its advisers were kept informed and were in close touch with the progress of affairs. There is testimony that in April, 1920, the county court was unwilling to accept anything less than the full amount due the county, with interest, and rejected a proposal that the county should accept the principal sum due, without interest. There is some evidence tending to show that at and prior to the May term, 1920, when the general levy was made, there were outstanding protested bridge warrants of the county to the amount of about $30,000. The testimony of S. P. Fleming, one of the judges of the county court, was that they considered the bond good, and thought they could collect it. Judge Fleming testified, saying in respect to the levy of fifty cents on the $100 in May, 1920: "We considered it necessary to make that levy in order to meet our obligation without refunding." He said they figured that there would be a part of the levy that would not be collected, and would be delinquent, and they thought they would have to make this levy to be sure they would have enough to meet the indebtedness, and denied that they had, at the time, in mind "about $30,000 in protested bridge warrants that the county owed."

One of the county judges died before the trial. J. F. Kircher, the other judge, testified:

"Q. In making the levy on these bonds in question, what did you consider, and on what did you consider and base your levy? A. The amount of revenue on hand at the time the levy was made, which was in May of that year, and the amount of money the court anticipated was necessary to conduct the affairs of the county. That is, an anticipation and estimation of the amount of money necessary to conduct the affairs of the county for the ensuing year."

Following that, his testimony was that the amount of money belonging to the bond fund was approximately $30,000. This had reference to money which was in the bank that failed. Following that statement the following questions and answers appear in his testimony:

"Q. At the time you made the levy did the court consider the chances of recovering or getting this money? A. It was very doubtful whether they did get the full amount.

"Q. In making up your estimate for that year, Judge, on what did you base, or, how did you arrive at, that amount? A. The figures furnished by the county treasurer, stating the amount of bonds due,

or could be paid or redeemed, showed an amount to require a certain amount of money.

"Q. On which you based your levy? A. Yes, sir."

The defendant introduced evidence to the effect that for several years next preceding the year 1920, the taxes collected in Cass County slightly exceeded ninety-seven per cent of the amount of the respective levies; also that there was no expense involved in their collection other than the statutory commission of two and a half per cent.

Under the terms upon which the cause was remanded upon the former appeal, the issue before the trial court was whether the levy was so grossly excessive as to "constitute, constructively at least, a fraud upon the taxpayers;" and the determination of whether this was so, was to be "judged not from the fact that it subsequently developed that a larger amount was levied than was actually required, but from the entire situation that confronted the county court at the time the levy was made.

The tax bill made a prima-facie case for appellant. It carried with it the presumption that the county court in making the levy did its official duty. [State ex rel. v. St. Louis-San Francisco Ry. Co., 300 S. W. 274, 277.]

The action is one provided for and authorized by Sections 13040, 13041, Revised Statutes 1919. Being an action authorized, and in form prescribed by statute, it is an action at law. [Kansas City v. Field, 285 Mo. 253; Bates v. Comstock Realty Co., 306 Mo. 1. c. 329; Schwab v. City of St. Louis, 310 Mo. 1. c. 135.] The cause was submitted to the court without a jury. No request was made for findings of fact. Neither party asked any special declaration of law. Each party asked a general declaration, peremptory in character, and the court gave the one asked by the defendant. Under the situation thus disclosed, the question here is whether there is substantial evidence to sustain the judgment of the trial court. The essential question was whether there was such an abuse of discretion as to justify interference by the court.

The power to levy a tax for county purposes is a power delegated to the county court—is legislative in character—and in the exercise of that power, the county court has a large discretion. All of the cases so hold. [Decker v. Diemer, 229 Mo. 296; State ex rel. Johnson v. St. Louis-San Francisco Railway, 286 S. W. 360; People v. C. & A. Ry. Co., 289 Ill. 282; People v. Sandberg Co., 277 Ill. 567; People ex rel. Bear v. Illinois Central Railroad Co., 266 Ill. 126; 3 Cooley Taxation (4 Ed.) secs. 1031, 1032.] The authorities cited for appellant, and others, are to the effect that courts rarely interfere with the exercise of this discretionary power, and do so only when there is clear evidence of an abuse of discretion.

The rule is stated by Cooley in Section 1031, as follows: "In fixing the amount or rate, the levying body has considerable discretion. The rate necessary to produce the amount required is largely within the discretion of the levying officers, since it is uncertain what the deficiencies in collection will amount to. But while local authorities have a reasonable discretion in providing in advance for necessary taxes, the courts may interfere if the discretion is abused by raising taxes faster than they are needed. A levy for future needs is invalid as excessive only when so excessive as to show a fraudulent purpose in making the levy."

In People ex rel. v. I. C. Railroad Co., 266 Ill. 636, 641, the court said: "It is not legal to supplement a shortage, if such exists, in one fund by an excessive and unnecessary levy for the other purpose."

Counsel for plaintiff urge that the levy was h. judgment of a court of competent jurisdiction, and that the validity of the tax so levied cannot be impeached in this collateral action, and cite a number of cases under that contention. The cases as cited are mainly those wherein the subject of attack was a result reached in a distinctively judicial proceeding. In one of them, State ex rel. Johnson, v. Bank, 279 Mo. 228, the collateral attack was sought to be made upon the judgment of the State Board of Equalization. It failed under the uniform rule observed by this court, that a board of equalization, in performing its duties, acts judicially.

In the opinion upon the first appeal, in the case at bar, the question whether the defendant could make the defense that the attack was so excessive as to be illegal, at least as to the excess of the amount reasonably required to take up the bonds, was not made the subject of specific discussion. But, necessarily, the ruling then made, reversing and remanding the cause in order that the plaintiff might show fully the conditions which confronted the county court, and that the defendant might show the net amount of the tax which at the time of the levy could reasonably have been expected to be realized, involved a ruling that the defense was permissible in this action. The nature of the defense set up in defendant's answer, as tersely stated in the opinion was, "that the levy was grossly excessive and therefore violative of designated provisions of both State and Federal Constitutions." The ruling was that exactions of taxes in advance of any needs of the government was condemned by sound public policy and violative of fundamental rights guaranteed by the organic law. The reversing and remanding, indicating the nature of the evidence which might be heard, and the broad range given in that regard upon the defense set up, inevitably carried with it the ruling that the defense was permissible, and became the law of the case upon the second trial. The question upon the second trial

was, did the facts in evidence, support the defense set up? Reference has been made to several decisions of the Supreme Court of Illinois upon the controlling questions herein involved. In the recent decision of that court in People ex rel. v. C. & A. Railroad Co., 324 Ill. 179, there is discussion of the subject here under consideration:

"It has been many times held by this court that taxing authorities have power to make a reasonable allowance for loss and cost of collection and that they should use sound business judgment in estimating such allowance. Courts will not interfere with the exercise o sound business judgment on the part of such public authorities except to prevent an abuse of that discretion. [People v. Chicago & Northwestern Railway Co., 322 Ill. 150; People v. Wabash Railway Co., 296 id. 527; People v. Chicago & Alton Ry. Co., 289 id. 282; People v. Sandberg Co., 277 id. 567; Chicago & Alton Railroad Co. v. Baldridge, 177 id. 229; Edwards v. People, 88 id. 340.]

"Appellant contends that the holding in the above cases has been that there must be a showing of fraud in order to justify the court's interference with the levy made by public authorities. While it was said in People v. Sandberg Co., supra, that the fact that in estimating the amount necessary for any purpose a larger amount is levied than that actually needed is no reason why a taxpayer should refuse to pay his taxes unless the amount levied is so grossly excessive as to show a fraudulent purpose in making the levy, such language is not to be understood as requiring the showing of actual fraud, as the rule referred to in that case, and laid down in cases here cited and others, is, in effect, that the courts will interfere with the decisions of public authorities to prevent a clear abuse by such officials of their discretionary powers. [People v. Atchison, Topeka & Santa Fe Railway Co., 276 Ill. 208; Same v. Same, 261 id. 33.] It is incumbent on the objector to show an abuse of discretion. What is such an abuse of discretion as to justify the interference of the court is a matter depending largely on the facts of each case. This court has always held that the levy of a tax to cover loss and cost of collection must be small in proportion to the entire tax. [People v. Chicago, Milwaukee & St. Paul Ry. Co., 319 Ill. 415; People v. Wabash Ry. Co., 314 id. 388; People v. Millard, 307 id. 556.]

"In the early case of Edwards v. People, supra, it was held that in the levy of a tax by the levy board it is proper that it take into consideration the past history of the State in the matter of losses and deductions which have occurred in the collection of the revenue and in the light of that experience exercise its best business judgment as to the rate necessary to produce the net amount required to be raised, and to fix such rate. Where the evidence clearly shows that public authorities have gone beyond the limits herein mentioned

they will be held to have abused the discretion vested in them, and to the extent of such abuse the levy and rate fixed by them will be held invalid. In no sense is it to be considered that actual fraud has been committed or that the showing of actual fraud is necessary.''

In that case there was considered the evidence as to what was shown by the experience of previous years as to the average percentage of loss and cost of collection of taxes, and also ruling that back taxes unpaid, but in process of collection, and distributable to the funds under consideration, were also to be borne in mind by the levying body. The court said, l. c. 185: ''There is but one thing to be considered by public officials in levying taxes, and that is, the matter of raising the amount of money necessary to meet the requirements of expenditure.'' In the instant case the amount necessary to meet the purpose, the retirement of the bonds, was not uncertain. It was $76,000, with whatever unpaid interest had accrued thereon. The defendant paid the amount represented by a levy of thirty-three cents on the $100 of the assessed valuation of its property, and did so on the theory that such levy based on past experience as to the loss and cost of collection, would produce a tax of approximately $60,000, which, with the funds on hand, would afford a sum more than sufficient to take up the bonds.

The evidence as to the situation and controlling circumstances, which confronted the county court at the time of the levy, was in large measure oral testimony. The evidence as to what percentage of money in taxes the levy would probably yield, was before the trial court, as was also the evidence as to the responsibility of those standing as sureties for the payment of the existing balance in the bond fund. We must assume that the trial court determined the issue in view of the evidence as to the conditions confronting the county court, at the time the levy was made, and in view of the knowledge and reasonable expectation of the county court at that time; and, so viewing the evidence, found that the county court could reasonably have anticipated that their action would result in the collection of a sum greatly in excess of the sum required for the purpose for which the levy was made. Under the evidence in the record, we cannot convict the trial court of error in so finding. As was said by the Supreme Court of Illinois, what may be a levy so excessive as to constitute an abuse of the discretionary power of the levying body, is a question to be determined upon the facts in the particular case. In this case the amount remaining in the fund, after satisfying all the purposes for which the levy was made, was approximately equal to one-half of the total amount so required.

We conclude that the judgment of the trial court must be affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.