BREAUX, C. J.
The purpose of this suit was to have it decreed that defendant is ineligible to the office of sheriff and ex officio tax collector, a usurper in office, and an intruder, and to have it decreed that his office is vacant because of his defalcation while in office.
The suit to have the office decreed vacant was instituted on the 9th day of August, 1904, and was placed at issue in March, 1900, by an answer pleading the general issue and special defenses. He was elected on the 19th day of April, 1904.
The term relator seeks to have decreed vacant has expired.
Defendant was elected at the general election in 1908 to serve another term.
*593 We do not conceive that there is any necessity of setting out all of the different phases of this case.' It would add nothing to the issue before us for decision. They are well known in one form or another. They are stated in the different suits that have been 'brought up before us for decision at different times.
The conclusion we have come to touching the merits of the ease and the disposition we •shall make of it render it unnecessary that we should pass upon the various points raised by the defense in support of their different stantially as follows: .
The facts needful to our decision are substantially as follows:
The defendant in the year 1897 was prosecuted for embezzlement in office before the ■district court, and after a jury trial was found not guilty.
In the present civil suit for his destitution as an officer, on trial he produced evidence for the purpose of proving that he is made a defaulter, not by his own fault and negligence, but that of an employe.
He also introduced evidence' of the fact that he had obtained from the Auditor of the state a letter which .in its terms, he contends, is equivalent to a quietus.
1-Ie also produced in evidence a receipt of the Treasurer of the state, which accords with the letter of the Auditor, introduced in evidence.
His contention is that he has paid every dollar he owed to the state and to his sureties.
The amount of the shortage was considerable.
In reference to the letter of the Auditor, Hon. W. W. Heard, it was addressed to the respondent in answer to a letter which he fthe Auditor) had received from respondent, in which he informs respondent that he has received the amount respondent states from the district attorney. It gives an account of -the settlement and adds:
4 £ &S- ^ p tl-p »Po 1*0 §■ § M p p P £* B ^ ® (9 o &P o o |_3 S p fcj* gSS-
The quietus was not forwarded, nor does it appear of record why it was not sent, unless it be that the Auditor became aware that this amount had been paid by the sureties of the respondent, and not by the respondent, and as he (the respondent) was indebted to these sureties, he arrived at the conclusion that he was not entitled to the quietus.
In State ex rel. Stewart v. Reid, 118 La. 106, 42 South. 662, the court reinstated the ease, which had been dismissed in the district court on an exception of no cause of action. The case was remanded, and the court directed to proceed with the trial, for the reason that the respondent had not paid his sureties and in consequence he was still ineligible to the office.
The case was transferred for legal reasons from the district court of the parish of Cal-casieu to the parish of Rapides, where it was tried before a jury and a decision rendered in favor of respondent.
The main contention in the district court, and the evidence upon which it was founded, produced by the respondent, was that he has since the decision before cited paid his sureties ; that he owes nothing, either to the state or to his sureties; that the citizens of the parish of Calcasieu have re-elected him to office.
The relator insisted that the respondent had not obtained his quietus, and that until he does he falls under the ban of the law laid down in the Constitution; and the further contention was that he has not paid his sureties in full.
We have applied ourselves to the examination of the testimony as relates to the payment of the sureties, and have made a summary of the facts pertinent to the question of payment.
We take up the history of the attempted *595 payment or payment of tlie bondsmen from the first.
As to tbis the testimony sets out that the defendant sent for the district attorney and advised him of the shortage; that the prosecuting officer Immediately tools steps to protect the interest of the state. He filed a rule against the defendant and his bondsmen. Soon after the defendant transferred all his property, valued at $25,125, to the bondsmen. This was over twice the amount of the shortage as testified to and as appears of record.
He placed this property in the hands of trustees, Harrison C. Drew, Leopold Kaufman, and Chester Brown, and they gave him a receipt in the nature of a counter letter, in which the purpose of the transfer was explained. Their power was to sell the property, pay the bondsmen first, pay other creditors afterward, and the final balance to be handed to the defendant.
The testimony states that part of the property was an orange grove.
A few days after the property had been delivered to the trustees to accomplish the purpose just mentioned a purchaser presented himself and offered $10,000 for part of the property; i. e., the orange grove.
The amount of the indebtedness of the defendant on his bond was $12,183.29, so that the amount offered would have gone far toward paying the debt.
One of the bondsmen, it appears, was quite antagonistic — would not consent to the sale, is the testimony- — and the result was that there was no sale.
One of the heirs of this bondsman testified that the opposition was of a political nature; that his ancestor wished to down the sheriff, and keep him down, or something to that effect.
About a year had elapsed since the shortage -and the payment by the bondsmen. They sued the defendant on the subrogation they had obtained from the state. The defendant confessed judgment.
The bondsmen made no attempt to collect the judgment.
The defendant testified (and there is no-evidence to the contrary) that he offered to the bondsmen to transfer the property to-them in full settlement, or in the alternative he offered to sell it to close the matter. The bondsmen refused. He then made a surrender in bankruptcy. The bondsmen would not make proof in the bankruptcy proceedings, and on that account lost the opportunity of collecting $4,000.
The defendant disclaimed that he was benefited by the shortage.
We will not state anything further on this-score. He was liable for the shortage is all that need be stated at this point.
It is inferable from the testimony that there was no good feeling between the defendant and his bondsmen.
He settled with them. Some of them, the record discloses, received less than the amount to which they had a right. None the less they accepted payment and consented to-a satisfaction of their judgment in full. They do not have the least claim against the defendant on the bond.
The defendant having paid all that he owed both to the state and to the sureties on his-bond, it remains for us to decide the effect that such payment has on his tenure at this time.
The purpose of the suit is not punishment. That has already been disposed of by the verdict of acquittal in the criminal ease, instituted against the defendant by the state. There can -be no new trial after an acquittal. The criminal prosecution could not have been interfered with. It was within the authority of the state to prosecute the defendant. If he had been found guilty, the result would be different.
He having been acquitted, the prosecution here is exclusively civil.
The defalcation in this suit cannot be sue- *597 cessfully invoked against the defendant to oust him from the office.
The article (182) of the Constitution imposes ineligibility, it is true, hut only until the defaulter “shall have obtained a discharge for the amount of such collections and for all public moneys with which he may have been intrusted.”
This qualification provided is not permanent. ’ No other reasonable interpretation can be placed on the article of the Constitution from which we have quoted.
Upon payment of all amounts for which he is a delinquent he is restored to the right to hold office.
The article (1S2) does not contemplate that punishment shall be inflicted in these proceedings. It relates only to an indebtedness. The prosecution is at an end the moment the amount is paid in full.
The article of the present Constitution before cited is a reproduction of the article of the preceding Constitution. The last, also, has been interpreted by this court (years ago) in words not to be misunderstood.
The court held substantially that the ineligibility ordained remained until the officer obtained a discharge.
Said the court in the cited case infra:
“We think the ineligibility was intended to continue and remain in force as long as the indebtedness to the state, the parish, or the school board existed; that is, as long as they or either of them had any legal unsatisfied claim against the respondent.” Not thereafter. State ex rel. Howell, District Attorney, v. Echeveria, Sheriff, 33 La. Ann. 716.
This is a complete answer to relator’s petition.
It would have been otherwise at any time before a complete discharge.
But having been decided in the cited case that ineligibility under article 182 of the Constitution was temporary, we cannot imagine it possible to give another meaning to the language quoted. The interpretation in the cited case is all-controlling, as it is entirely in accord with the article of the Constitution before cited.
Next in the order of the argument, relator’s contention is that the defendant, Reid, never obtained a discharge for the amount he collected; that he never returned to the state the amount for which he is delinquent; that the payment by his sureties of their obligation was not a discharge.
It is true, as just stated, that the defendant never paid the amount of his delinquency directly to the state; but he paid the amount to-his sureties, who had paid the state. They were subrogated to her rights to collect the amount. They held against the principal just the same rights that the state had before she received the amount due. The sureties in effect represented the state as creditor.’ When the defendant sheriff paid them, he paid all concerned. The state and the sureties, after payment, had no further claim.
While the payment by the sheriff to hie sureties is not greatly contested, the relator questions very much the form of the discharge. The contention is that, unless a formal discharge be obtained, the ineligibility does not cease. Only the quietus of the Auditor should be accepted as sufficient, is specially urged by relator.
This may be to some extent correct. In a broad sense it is not. If the officer has a receipt in full, it would hardly do to oust him from his office under the terms of the article of the Constitution before cited. It only requires payment, and payment may be shown in a court of justice without the Auditor’s quietus, if for some reason it has not been issued.
The Auditor has in effect given him an equivalent to a quietus, or at any rate he states that the defendant is entitled to a quietus, in the letter to which we have before referred.
*599 The most that could he done in this case •would be to have the proceedings held in abeyance until the respondent obtains his •quietus.
If the officer authorized to issue the quietus on the evidence before us were to refuse to issue it, on application in due form this •court would surely hold that he is entitled •to his quietus and would direct the Auditor to issue it. This would only add to the law’s delay. It would accomplish nothing, and for that reason we hold at this time, proof of payment having been made, as before stated, he is entitled to reinstatement under the language of the article of the Constitution be^ fore cited.
We were attracted by the proposition of the defendant that relator’s petition to oust him, the term having expired, did not present ground for removing him from office, and that his eligibility could not at this time and in these proceedings be questioned, and that his discharge was not directly questioned; as to the last invoking, in effect, collateral attack not admitted against discharge. See Echeveria’s Case, 33 La. Ann. 709.
We weighed the grounds indicated by the foregoing, and left them convinced of their great force. We deemed it advisable, none the less, to rest our decision on other grounds stated in our opinion.
It is time to terminate this litigation. The maxim, the “law’s delay,” has special application.
The law and the evidence being in favor of the respondent, D. J. Reid, sheriff, it is ordered, adjudged, and decreed that the judgment of the district court is affirmed. It is further ordered, adjudged, and decreed that the defendant pay such costs as he has heretofore been condemned to pay, if there are any such •costs.
MONROE, J., dissents.