No. 3043

Second Circuit

MOWER v. BARROW

(April 9, 1931. Opinion and Decree.)

T. H. McEachern, of Homer, and Goff & Barnette, of Arcadia, attorneys for plaintiff, appellant.

Atkins & Meadors and McClendon & Seals, of Homer, attorneys for defendant, appellee.

TALIAFERRO, J. This is a petitory action wherein plaintiff seeks to recover judgment recognizing him to be the owner and entitled to the possession of N. ½ of S. W. ¼, section 4 and N. E. ¼ of S. E. ¼ section 5, township 22 north, range 6 west, in the parish of Claiborne, containing 120 acres, more or less.

Plaintiff declared upon a chain of title by which he expects to recover, as follows, viz.:

That he acquired the land from Calvin R. Mower on April 10, 1925; that Calvin R. Mower acquired same from Virginia T. Johnson on May 10, 1907; that Virginia T. Johnson acquired from B. F. Allen by sheriff's deed April 18, 1898, in a suit against said Allen, made under a writ of seizure and sale; that B. F. Allen acquired the property from M. M. Taylor, C. N. Taylor, Mollie E. Taylor, wife of J. C. Willis, and Mary I. Taylor, by deeds dated January 13, 1890, and April 11, 1890; that those four vendors acquired title to N. ½ of S. W. ¼ of section 4 by act of exchange with their father, Dr. J. P. Taylor, January 13, 1890, and acquired N. E. ¼ of S. E. ¼ of section 5 by inheritance from their mother, Rebecca Monk Taylor, who, it appears, died in 1870.

Plaintiff also in his petition sets up briefly the chain of title to each of said tracts—the forty-acre tract and the eighty-acre tract—from the United States down to J. P. Taylor and his wife, Rebecca Monk Taylor, but, inasmuch as both sides to this suit trace their titles to a common author, viz: the heirs of J. P. Taylor and wife, we omit further reference to the chains prior to the ownership by the Taylors.

Plaintiff alleges that T. E. Barrow, defendant, is claiming these lands as owner and is in illegal possession thereof without any right, title, or interest therein; that said Barrow, on May 28, 1924, executed a deed to Haynesville Lumber Company, Inc., conveying the timber on said lands, and that said company claims said

timber and possession thereof without any legal right or interest therein or thereto.

Defendants, before further pleading, filed prayers for. oyer of the title deeds alleged on by plaintiff as constituting the chain of title through which he expects to recover the land in controversy, which were sustained by the court, whereupon plaintiff produced and filed in compliance with the court's rule, certified copies of the various deeds and other documents and papers requested in the prayer for oyer, and referred to in the petition. The rule was declared discharged by the court, and the deeds, documents, and other papers filed in compliance therewith became a part of the pleadings in the case. Code Prac. arts. 174, 175; Baldwin Lumber Co. v. Todd, 124 La. 544, 50 So. 526.

After plaintiff complied with the rule on the prayer for oyer, defendants filed exceptions of no right or cause of action, which were by the court referred to the merits of the case. Defendants then answered fully the petition and demand of plaintiff.

Defendant Barrow, after denying other allegations of plaintiff's petition, admitted that he claimed the land in question and that he is in possession thereof, under good and valid title thereto. He admits sale of the timber to Haynesville Lumber Company, Inc., as alleged.

For further answer, this defendant avers:

That he acquired from J. D. Palmer on December 2, 1919, the following described tract of land in Claiborne parish, viz.:

"SE¼ of SE¼ of Section 5, and SW¼ of SW¼ of Section 4, and NE¼ of NE¼ of Section 8, and 15 acres in a triangular shape lying between the residence of the M. M. Marcus place and Dr. J. P. Taylor place, said 15 acres acquired by Dr. J. P. Taylor from M. M. Marcus by private act on March 17, 1873, as per deed recorded on page 311 off Book L conveyance records of Claiborne parish, Louisiana, said 15 acres all being located in NW¼ of NW¼ Section 9 Township 22 N. R. 6 West. Also all that part of the N½ of SW¼, S½ of NW¼, and NW¼ of SE¼ of Section 4, and all that part of NE¼ of SE¼ of Section 5, lying south of Middle Fork Creek, all of said land being located in ·Township 22 N. R. 6 West, containing 215 acres more or. less, as will be seen by reference to said deed bearing date December 2, 1919, which is of record on page 39, book 17, conveyance records of Claiborne parish, a certified copy of same being hereto attached and made part hereof."

That said J. D. Palmer acquired said land from Charles M. Taylor, Mrs. Mattie E. Willis, and M. M. Taylor on January 14, 1915. That he and his said author in title, J. D. Palmer, have held and possessed said lands, including all that part of N. ½ of S. W. ¼, section 4, and N. E. ¼ of S. E. ¼, section 5, lying south of Middle Fork Creek, township 22 N., R. 6 west, continuously, corporeally, peaceably, publicly, unequivocally and without interruption, in good faith, under titles translative of property, believing they each had acquired from the true owner, since January 14, 1915, to the date of filing of this suit; said Palmer so possessing as owner from January 14, 1915, until December 2, 1919, and defendant so possessed thereafter. That they have annually paid all taxes assessed against said property, the said 215-. acre tract, farmed and cultivated same personally and through tenants, cut. timber therefrom, and in general exercised all the rights and privileges incident to ownership. He expressly disclaimed ownership to or interest in any part of said 120 acres which is north of Middle Fork Creek. He specially pleaded prescription of ten (10)

years acquirendi causa, as provided by articles 3478 to 3498 of the Civil Code, and called the widow and heirs of J. D. Palmer, his grantor, deceased, in warranty to defend his title to the land involved in this litigation.

The Haynesville Lumber Company, Inc., admitted purchasing the timber on the land, as alleged by plaintiff, from T. E. Barrow, defendant, and possession thereof. In all respects this defendant's answer is the same as that of its co-defendant, T. E. Barrow. A plea of ten years. prescription was interposed against plaintiff's right to recover. This defendant called its vendor in title to the timber in warranty, praying for judgment against him should plaintiff succeed to any extent in his suit.

The widow and heirs of J. D. Palmer, deceased, called in warranty by defendant Barrow, made no appearance nor filed answer.

On the day the case was called for trial, plaintiff filed pleas of estoppel and prescription of ten years against defendants. The court minutes do not show the disposition made of these pleas, but we assume they were referred to the merits, as the court passed on them in its judgment disposing finally of the case.

The plea of estoppel was intended to forestall any efforts defendants might make or undertake to question the sufficiency and validity of the titles of the common author, the Taylor heirs.

The plea of prescription is based upon the following allegations of fact contained therein, viz.:

"That your plaintiff and his authors in title have exercised possession of the 614 acres of land described in his deed by cultivating part of said land with title to the whole, and by exercising complete dominion over same, cutting timber therefrom, living on part of same, either in person or through tenants, paying taxes on same since about the year 1890, and for more than ten years, under title translative of property," etc.

## PLEA OF ESTOPPEL.

The lands under discussion were owned by the heirs of Rebecca Monk Taylor in the year 1890. They acquired N. ½ of S. W. ¼, section 4, in exchange with their father, Dr. J. P. Taylor, and inherited N. E. ¼ of S. E. ¼, section 5, from their mother.

It is admitted on both sides that their respective titles are traceable to and arise from the Taylor heirs. No citation of authority is needed to support the proposition that parties to a petitory action will not be allowed to assail or impugn the title of the common author.

In view of this situation, the plea of estoppel served no other purpose than to call to the court's attention the admitted facts and remind it of the law applicable thereto. However, it does not appear that any effort was made by defendants to question the validity of the titles of the common author.

## PLEA OF PRESCRIPTION OF PLAINTIFF.

The evidence of plaintiff and defendants unquestionably discloses that plaintiff, nor those prior to him in title, ever has had actual corporeal possession of the lands sued for. Plaintiff's plea of prescription seeks to establish that these lands are, or were, constructively in possession of plaintiff and his authors in title on account of them forming part of the large tract of 614 acres, a part or parts of which, it is alleged, had been in posses-

sion of plaintiff's authors in title in the past.

Plaintiff's petition admits that defendants are in possession of the lands sought to be recovered. If this be true, and for the purposes of this suit it is a closed question, then plaintiff cannot be in possession. Two possessions, of the same rank and character, cannot co-exist as to the same property. One or the other must be the superior. Anyway, it is admitted that defendants are in possession, and plaintiff must be held to his pleadings. He cannot shift positions.

The evidence further reveals that, whatever be the nature of defendants' possession, same had its inception in 1915 immediately after the deed of the Taylor heirs to J. D. Palmer, and that such possession was continuous and uninterrupted until the filing of this suit.

It is obvious that such prescriptive rights as may have accrued to plaintiff and his authors in title prior to 1915, when viewed in the light of the pleadings, were superseded by the possession of defendants and their authors in title.

The plea of prescription is not good.

## EXCEPTION OF NO CAUSE OF ACTION OF DEFENDANTS.

Defendants, in brief, urge us to sustain the exception of no cause or right of action which is leveled against plaintiff's petition, as enlarged by the filing of deeds, etc., under the prayer for oyer, and which was not directly passed on by the court in its decision of the case on the merits.

It is now well established by the jurisprudence of this state that the appellate court is without authority to decide exceptions in a case not directly passed on by the trial court. Siragusa et al. v. I. C. R. R. Co., 152 La. 745, 94 So. 376; Keith v. Lee, 13 La. App. 314, 127 So. 139.

For this reason we shall have to abstain from a consideration of defendants' exception of no cause of action.

It is patent, that unless there is some fatal defect in plaintiff's title, or that his ownership has been lost to others by adverse possession, he must prevail in this case, for he traces his title back to the Taylor heirs in 1890, whereas defendants' title sprang from the same source in 1915.

Evidence on the part of plaintiff, while somewhat indefinite, tends to show that B. F. Allen, and probably one or both of the Mowers, had tenants on some portion of the 614-acre tract they owned, and collected rents, but there is little or no evidence to this effect since the year 1912.

Dr. J. P. Taylor died in 1912. His residence was located in the southeast corner of S. E. ¼ of S. E. ¼, section 5, and the premises extended over into S. W. ¼ of S. W. ¼, section 4, N. E. ¼ of N. E. ¼ section 8, and N. W. ¼ of N. W. ¼, section 9, all of which, except a part of the 40 acres in section 9, he owned at the time of his death. There were fields on nearly every side of the residence and premises.

M. M. Taylor, a son of Dr. Taylor, deceased, testified as a witness on the trial of this case. He stated that, after he and his co-heirs sold the 614-acre tract to B. F. Allen in 1890, Dr. Taylor had, and used, a pasture about one-fourth of a mile northeast of the residence; that this pasture was not on the Allen land; that Allen never used it; that the pasture was on the right of and ran up the road going towards Colquitt; and that the pasture fence had not been moved since 1917.

Several other witnesses testified practically to this effect:

That J. D. Palmer, in January, 1915, after his purchase of the 215-acre tract from the Taylor heirs, took physical possession of same by cultivating the open lands, through tenants, used the pasture and out hay from portions of it, cut timber and made staves from the land, and in many other respects exercised openly the rights and privileges of ownership.

In December, 1919, after his purchase of the property from Powell, his stepfather, T. E. Barrow, defendant, moved into the Dr. Taylor residence and held possession of the entire property, as did his vendor, Powell, for the next five years, when he moved away, leaving the property in custody of his tenants.

Mr. Barrow engaged a surveyor to run the lines of the land he purchased from the Taylor heirs. This survey, as well as that of the engineer, Lupo, made at a later date, discloses that the pasture referred to by the witnesses, including M. M. Taylor, embraced some 20 acres in N. E. ¼ of S. W. ¼, of section 4, and 2½ acres in the southeast corner of N. W. ¼ of S. W. ¼, section 4, and extends southerly into S. ½ of S. W. ¼, section 4. A blueprint map of the locus in quo, filed in evidence, reflects the situation as it is affected by possession of the pasture. This pasture had been in existence and used as such long prior to 1915,' and flanks the road to Colquitt. It was inclosed.

There is very little controversy as to the facts of possession of the 215-arce tract by Palmer and Barrow since 1915, and as they held title to the 120 acres in controversy, it is contended that their possession of part of same and of other portions of the land included in their deeds, all adjacent, formed the predicate for the prescription of ten years acquirendi causa.

Plaintiff argues that the description of the "George Nelson" land in the deed to Palmer from the Taylor heirs, and in deed to Barrow from Palmer, is so ambiguous and indefinite that it cannot form the basis for prescription of ten years' acquirendi causa.

There is no positive evidence in the record to identify any particular parcels of land as constituting the "George Nelson" tract, dehors the deeds to Palmer and Barrow, and without such positive evidence showing a contrary composition of this tract, it will be assumed that the deeds themselves correctly determine the question. These descriptions read:

"Also about 80 acres of land known as the 'George Nelson' land in N½ of SW¼, S½ of NW¼, NW¼ of NE¼, and all that part of NE¼ of SE¼, Sec. 5, lying south of Middle Fork Creek, that was once owned by George Nelson. The last described 80 acres known as the 'George Nelson' land all lies south of Middle Fork Creek, no land north of said Middle Fork Creek is to be included in this deed."

Reference to the blueprint map in the record discloses that Middle Fork Creek traverses the N. W. ¼ of S. E. ¼ and N. E. ¼ of S. W. ¼, cuts the southwest corner of S. E. ¼ of N. W. ¼, and traverses S. W. ¼ of N. W. ¼, of section 4; it does not touch N. W. ¼ of S. W. ¼, section 4, nor N. E. ¼ of S. E. ¼, of section 5. Evidently a much greater acreage than 80 is embraced in this description.

Any one reading these deeds will be immediately impressed with the fact that the creek is the northern boundary of the lands intended to be conveyed, and that, if any 40 does not touch the creek, but is

south of it, such in its entirety was conveyed.

In paragraph 4 of plaintiff's petition, it is alleged that George Nelson once owned N. ½ of S. W. ¼ of section 4, but his ownership of the other subdivisions at any time is not established.

The lands involved herein, together with adjacent land aggregating 614 acres, were acquired by B. F. Allen from the Taylor heirs in January, 1890. He mortgaged the entire tract to Virginia T. Johnson in January, 1892, for $1,000. This debt was not paid in full, and on February 7, 1898, the mortgagee began foreclosure proceedings against Allen in the district court of Claiborne parish. An order was signed by the then judge of that court, directing that notice of demand of payment be made on defendant, and, if not complied with within legal delays, a writ of seizure and sale issue commanding the sheriff of the parish to seize and sell the mortgaged property to pay and satisfy the notes foreclosed on. The original papers in this suit are before us. Notice of demand issued promptly, and was served February 8, 1898. Here the record closes, save for the sheriff's deed to Virginia T. Johnson of the mortgaged property, dated April 18, 1898. No writ of seizure and sale appears in the record of the suit, and no return of the sheriff thereon, if such ever issued. Plaintiff does not specifically allege that such a writ issued, and no attempt is made in the pleadings or evidence to explain or account for its absence.

Defendants contend that the failure of plaintiff to produce the original writ of seizure and sale and sheriff's return thereon, and no averment, supported by satisfactory proof, that such writ did actually issue, strikes a fatal blow to plaintiff's title to the lands sued for, even though such title be otherwise valid. They are supported in this position by law and jurisprudence. A long line of decisions of the Supreme Court uniformly hold to this effect.

In Dede v. Boguille, 8 La. Ann. 138, the court said:

"The settled jurisprudence of this Court is, that to constitute a title translative of property, the judicial sale must be accompanied by the judgment and execution."

And again, in Hyman v. Bailey et al., 13 La. Ann. 450:

"It is unnecessary now to express an opinion upon the merits of the cause, for plaintiff has shown no title, and he has no right to force defendants to exhibit their title, until he has established an adequate interest in the land to authorize it. Plaintiff pretends to have purchased the land at Sheriff's sale, on the 7th of April, 1855, by virtue of an execution issued out of the District Court of the parish of Rapides, on a judgment of A. Lilly v. S. E. Cuny et al., wherein defendant, Bailey, was a judgment debtor. The only evidence of such title is the Sheriff's deed of sale of the land to plaintiff. This is insufficient. It is incumbent on a party, claiming under a sale by virtue of a fi. fa., to produce the writ of execution, the Sheriff's return, and the judgment."

In the more recent case of Fontelieu v. Fontelieu, 116 La. 866, 41 So. '20 the Supreme Court reviewed at length our jurisprudence on this important question. To the same effect are the following cases: Roussel v. New Orleans Land Co., 143 La. 1058, 79 So. 860; Clarkston v. Vincent & Co., 32 La. Ann. 613.

It is axiomatic that plaintiff must recover on the strength of his own title, not on the weakness of that of his adversary.

"The plaintiff in an action of revendication must make out his title, otherwise

the possessor, whoever he be, shall be discharged from the demand." Code of Practice, art. 44; Trellieu Cypress Lumber Co. v. Albert Hansen Lumber Co., 121 La. 707, 46 So. 699.

Where defendant is actually in possession, the plaintiff cannot be permitted to change his position with the form of action and escape the burden imposed upon him by this article. In order to recover and turn his adversary out of possession, he must establish his title. Bruton v. Braselton, 157 La. 68, 101 So. 873; Atchafalaya Land Co. v. Brownell-Drews Lumber Co., 130 La. 657, 58 So. 500, Ann Cas. 1913C, 1358.

But plaintiff insists that the sheriff's deed to Virginia T. Johnson makes out a prima facie proof of sale, and cannot be attacked collaterally, citing Lawrence v. Birdsale, 6 La. Ann. 688; Anderson v. Carroll, 23 La. Ann. 175; O'Hara v. Booth, 29 La. Ann. 817; Gillis v. Carter, 29 La. Ann. 698; Shaw v. Marceaux, 12 La. App. 401, 125 So. 460.

The doctrine laid down in these cases fit the facts to which it was applied, but, in a petitory action such as we are considering, plaintiff alleging possession in his opponent takes upon himself the burden of establishing a valid, if not perfect, title in himself as against the admitted possessor.

We find in the record a lucid opinion of the district judge covering all points raised in this suit, with his reasons for judgment. He sustained defendants' plea of prescription and rejected plaintiff's demand. We have reached the same conclusions of the case as did the lower court.

The judgment of the lower court appealed from is affirmed.