**14 So.2d 829**

**STATE ex rel. JONES, Governor, v. EDWARDS et al.**

No. 36762.

June 21, 1943.

Rehearing Denied July 13, 1943.

Eugene Stanley, Atty. Gen., W. C. Perrault, Asst. Atty. Gen., and R. H. Lee, Sp. Asst. Atty. Gen., for plaintiff and appellee.

Ponder & Ponder and L. B. Ponder, Jr., all of Amite, for Frank M. Edwards, defendant and appellee.

S. S. Reid, of Amite, and Monroe & Lemann, Dufour, St. Paul & Levy, and Chaffe, McCall, Bruns, Toler & Phillips, all of New Orleans, for other defendants, appellees.

ODOM, Justice.

This is a suit brought by the State of Louisiana on the relation of the Governor, who appears on behalf of the State, and by the State appearing through the Attorney General on behalf of "all governmental sub-divisions of the State as it and/or their interest may appear", against Frank M. Edwards, sheriff and tax collector for the Parish of Tangipahoa, and against his bondsmen, to collect a sum in excess of $100,000.

According to the allegations of the petition, the defendant Edwards is now, and has been continuously since 1928, sheriff and ex officio tax collector for the Parish of Tangipahoa.

It is alleged that he was elected in 1928 for a four-year term, and that for that term he gave two bonds, one for $6,000 as sheriff and one for $20,000 as tax collector, with the Globe Indemnity Company as surety on each of the bonds; that he was reelected in 1932 for another four-year term, and that for that term he gave two bonds, one for $6,000 as sheriff and one for $20,000 as tax collector, with the Fidelity & Deposit Company of Maryland as surety; that he was reelected in 1936 for another four-year term and gave bond in like amounts, with the American Surety Company of New York as surety, and that he was reelected in 1940 for another four-year term and executed bonds for the same amounts, with the American Surety Company of New York as surety.

It is alleged that under the law all fees and other charges in civil, criminal, and other matters allowed for the performance of any duty of said sheriff and ex officio tax collector should be deposited by him in the "Sheriff's Salary Fund" and accounted for under that heading; that the defendant Edwards as sheriff was authorized to draw his salary monthly by check or warrant and issue to his employees and deputies checks or warrants against the said "Sheriff's Salary Fund" for the amounts due them; that for other expenses of his office within the allowance fixed by law he was further authorized to draw checks or warrants against said "Sheriff's Salary Fund," provided that any such salary payments to his deputies and compensation to his employees were made according to law, and provided further that any expenditures out of the "Sheriff's Salary Fund" for the operation of his office "were properly supported by statements, bills, receipts and other supporting data

as proof that such expenditures were made to cover the necessary expenses of his office; and provided further that the total of such expenditures out of the 'Sheriff's Salary Fund' did not exceed the limit fixed by law."

It is alleged in Paragraph XIII of the petition that a partial examination of the accounts of the said Edwards as sheriff and tax collector, made by the Supervisor of Public Funds and submitted under date of September 2, 1941, "disclosed that said Edwards has failed to properly account for, has misused and has otherwise misappropriated from his accounts as Sheriff and Ex-officio Tax Collector sums of money in amounts and during the periods as follows". Then follows an itemized statement which shows that the defendant Edwards as tax collector had failed to account for ad valorem taxes amounting to $5,785.85 collected during his four-year term of office beginning in 1940, and that he had failed to account for inheritance taxes collected during his last three terms, amounting to $234.25, and for hunting licenses amounting to $75 collected during his term of office beginning in 1940—making a total amount unaccounted for of $6,095.-10.

In connection with the allegation made in Paragraph XIII of the petition that the tax collector had failed to account for the sum of $5,785.85 ad valorem taxes collected during his present term of office, which began in 1940, we note that in Paragraph XXVII of the petition it is alleged that, while the general audit was being made of the sheriff's accounts in June and

July, 1941, the deputy tax collector exhibited to the auditor a deposit slip evidencing a deposit "in said 'Tax Collector's Account' on July 12, 1941, in the amount of $5800.89, stating that $5785.89 of same represented postdated checks on hand on the morning of June 30, 1941, and covered taxes collected prior to June 30, 1940 [evidently 1941], and the remainder of $15.00 represented receipts from angling licenses sold in July, 1941". Crediting the defendant Edwards with the deposit made on July 12, 1941, eliminates the alleged shortage in his account as tax collector in so far as ad valorem taxes are concerned.

In Paragraph XIV of plaintiff's petition, it is alleged that, according to the audit made by the Supervisor of Public Funds, "said Edwards has failed to properly account for, has misused, and has otherwise misappropriated from his 'Sheriff's Salary Fund', or from other funds in his custody which should have been transferred into 'Sheriff's Salary Fund', sums of money in the amounts and during the periods as follows". According to the statement which follows, the total amount of the funds not properly accounted for, misused, and otherwise misappropriated from the "Sheriff's Salary Fund" is $95,438.78.

Each of the bonding companies mentioned above is made a party defendant in the suit. Plaintiffs pray for judgment in solido against Edwards and the Globe Indemnity Company in the sum of $3,006.85, this being the amount of the alleged shortages and misappropriations during his four-year term of office beginning in 1928; for judgment in solido against Edwards and

the Fidelity & Deposit Company of Maryland in the sum of $57,033.40, this being the amount of the alleged shortages and misappropriations during his second term of office beginning in 1932; and for judgment in solido against the sheriff and the American Surety Company of New York in the sum of $41,493.63, this being the amount of the alleged shortages and misappropriations during his third term beginning in 1936 and his fourth term beginning in 1940.

Edwards, the sheriff, appearing through separate counsel, filed the following exceptions and pleas: (1) A plea of prescription of two years; (2) an exception of vagueness; (3) an exception of misjoinder of causes of action; (4) an exception of no right of action; (5) an exception of no cause of action, and (6) a plea of estoppel.

The surety companies, made defendants, filed the following exceptions and pleas: (1) An exception of vagueness; (2) an exception of misjoinder of parties plaintiff; (3) an exception of misjoinder of parties defendant; (4) an exception of improper accumulation of actions; (5) an exception of want of capacity of plaintiff; (6) an exception of lack of interest of plaintiff; (7) an exception of no cause of action; (8) a plea of estoppel, and (9) a plea of prescription of two years.

According to the court minutes of February 27, 1942, these exceptions and pleas were argued by counsel for the respective litigants, were submitted, and the court ordered that briefs be filed within five days. The minutes of May 8, 1942, show that "this matter was again taken up and Court

rendered judgment for written reasons, ordering that the plea of Estoppel be maintained and that the suit be dismissed with Prejudice". On the same day there was judgment decreeing that the plea of estoppel "be and the same is hereby maintained and relator's petition be dismissed with prejudice at its costs". From this judgment plaintiffs appealed.

The trial judge said in his written opinion:

"The conclusions of the Court reached with reference to the plea of estoppel forego the necessity of passing upon the other exceptions urged."

The judge having specifically refrained from passing on the various exceptions and pleas of prescription filed, it follows that the only question before this court is whether the judgment maintaining the plea of estoppel is correct.

The plea of estoppel is based upon the ground that the defendant Edwards, as ex officio tax collector, was granted a quietus by the State Auditor for each of the many years during which he has held office.

Counsel for the sheriff, Edwards, say in their brief that upon the issuance of a quietus "the door is forever closed upon audits and charges of defalcation, that such a 'quietus' cannot be collaterally attacked and operates as an estoppel both against the State and against the party in whose favor it is issued".

The trial judge in his reasons for judgment said:

"It is elementary that where a receipt or discharge is given a public official for a particular year, showing that his accounts and funds are orderly then to permit the State of Louisiana the right to collaterally attack this quietus and to maintain such an action would in fact permit the breaking of faith between the State and its officials and this Court recognizes and being supported by competent authority that no government could stand which would permit such undermining of its officials."

Counsel and the judge seem to have overlooked the fact that a quietus issued by the State Auditor relates solely and exclusively to State taxes and licenses due the State. The judge in the course of his opinion quoted the quietus issued by the Auditor to Sheriff Edwards dated October 31, 1940. The quietus reads in full as follows:

"AUDITOR'S OFFICE
"STATE OF LOUISIANA
"NO. 801

"Baton Rouge, La. Oct 31, 1940.

"Whereas Hon. Frank M. Edwards Tax Collector in and for the Parish of Tangipahoa has exhibited to me the undersigned Auditor of the State of Louisiana, the receipts of Hon. A. P. Tugwell State Treasurer in full for the payment of State Taxes for the year 1939.

"I therefore issue this Quietus on the part of the State of Louisiana in favor of said Hon. Frank M. Edwards and against any claim on the part of the State for the Taxes and Licenses of the years above stated.

"Given under my hand and seal of office the day and date above written.

"(Signed)　L. B. Baynard,
"Auditor State of Louisiana"

The quietus issued by the Auditor for each of the other years recites, as does the one quoted above, that, whereas the Honorable Frank M. Edwards, tax collector, has exhibited to the Auditor of the State of Louisiana the receipts of the Treasurer "in full for the *payment of State Taxes* for the year————. I therefore issue this Quietus on the part of the State of Louisiana in favor of said Hon. Frank M. Edwards *and against any claim on the part of the State for the Taxes and Licenses of the years above stated*". (Italics are the writer's.) The quietus issued by the Auditor therefore shows on its face that it relates to the account of Edwards, "Tax Collector", and relates solely to the payment of State taxes and licenses.

Conceding, without holding, that the issuance of a quietus to a tax collector by the State Auditor, certifying that the tax collector has accounted to the State for all State taxes charged against him on the tax rolls for a given year, would estop the State from thereafter proceeding against the tax collector to collect alleged shortages in his account with the State, it does not follow that the plea of estoppel filed in this case should have been sustained and the suit dismissed. The reason is that the present suit is to recover, in addition to other sums, the sum of $95,438.78, which amount, according to the allegations of the petition, Sheriff Edwards has failed to account for

properly, has misused, and has otherwise misappropriated from his "Sheriff's Salary Fund" and from other funds in his custody which should have been transferred into the "Sheriff's Salary Fund".

While, as we have stated, it is alleged in Paragraph XIII of the petition. that the sheriff had failed to account for "ad valorem taxes" amounting to $5,785.85, it is alleged also in Paragraph XXVII that, while the audit was being. made, the deputy tax collector exhibited a deposit slip showing that there had been deposited to the credit of the tax collector's account an amount sufficient to cover this particular shortage; so that the amount really involved in this litigation is the sum of $95,438.78, alleged to be the amount which the defendant .Edwards has failed to deposit properly in, and has misused, and has otherwise misappropriated from, his "Sheriff's Salary Fund".

Sheriff Edwards testified that he had a quietus for each and every year since he had been sheriff. He evidently referred to the quietus issued each year by the State Auditor, as his counsel offered and filed these in evidence. He testified further that his accounts had been audited annually according to law, and that no demand had ever been made upon him to account for short-ages.

A quietus, as defined in Webster's New International Dictionary, is a "Final discharge or acquittance, as from debt or obligation; that which silences claims". A quietus issued by the State Auditor to a sheriff as ex officio tax collector, whose duty it is under the law to collect and account for taxes and licenses due the State (Section 65,

Article VII of the Constitution; Section 77, Act No. 170 of 1898), evidences his discharge or acquittance from the debt or obligation he is due the State "for the payment of State Taxes" and licenses due the State. It does not relate to his obligation to account for the amounts which the law requires him to deposit in the "Sheriff's Salary Fund", and for which he must account.

In support of his ruling that the plea of estoppel should be sustained and that this suit should be dismissed, the trial judge cited, and quoted extensively from, the opinion on rehearing, written by Justice Poche, in the case of State ex rel. Howell v. Echeveria, et al., 33 La.Ann. 709. The ruling in that case does not, in our opinion, support the conclusion reached by the trial judge in this case.

In that case, the State of Louisiana, on the relation of the district attorney pro tempore, of the police jury, and of the school board, instituted a suit, alleging that the defendant, who claimed to have been elected and commissioned as sheriff of the parish, was ineligible, under Article 171 of the Constitution of 1879, to hold the office of sheriff and to exercise its duties and functions, because, as alleged, he had previously been tax collector for the parish and treasurer of the school board, and in his said capacities he had received large sums of money for which he had not accounted, and was therefore a defaulter in a large amount for State and parish taxes collected by him, and had never received a discharge for the amount of such collections and for all public money with which he had been entrusted.

The suit was brought under Section 2593 of the Revised Statutes, which provides that suit may be brought by the district attorney or the district attorney pro tempore, to oust any person who "shall usurp, intrude into or unlawfully hold or exercise any public office or franchise within this State".

Article 171 of the Constitution of 1879 provides that:

"No person who, at any time, may have been a collector of taxes, whether State, parish or municipal, or who may have been otherwise intrusted with public money * * * shall be eligible * * * to any office of honor, profit or trust under the State government * * * until he shall have obtained a discharge for the amount of such collections, and for all public moneys with which he may have been intrusted."

The defense urged by the sheriff in that case was that he had settled with the State, the parish, and the school board in full, "and that he had received a discharge from these several parties plaintiffs, and having been duly elected and commissioned, was entitled to the office of sheriff, to hold which office, plaintiffs claimed that he was not eligible".

The court stated that the sole question for decision under the pleadings was "the eligibility or ineligibility of the defendant to hold the office of sheriff; and it is still further narrowed down to the question whether or not the discharge or discharges which he alleges he has obtained, have been granted to him by competent authority and fulfill that requirement of the article of the Constitution necessary to be observed and complied with to relieve him from the disabilities, without fulfilling which, such disability would rest upon him".

In that case the sheriff had a quietus from the State and the police jury, and, while he did not have, and did not claim to have, a quietus from the school board, he did contend that he had settled in full with the parish school board. His defense therefore was that he was not a defaulter.

It developed that, as a matter of fact, he had made a settlement with the State Auditor for the amount which he was due the parish school board, and the court on first hearing held that his settlement with State Auditor of his indebtedness to the school board was a sufficient discharge of his obligation to that body, and, since he had a quietus from the State and the police jury, the court held that he was eligible to hold the office.

On rehearing, the court held that the settlement made with the State Auditor for the amount due the school board did not meet the requirements of the Constitution, which provided that no person who may have been a collector of taxes shall be eligible to any office of honor, profit, or trust "until he shall have obtained a discharge for the amount of such collections, and for all public moneys with which he may have been intrusted".

In speaking of the "discharge" which a former tax collector must obtain to hold office, the court said:

"Such a discharge, obtained of course from the proper authority, that is from the power or body from which the mandate or

trust emanated, or for whose account the funds were received, was thus imposed as a condition precedent to eligibility in this State.

"Hence it could not be contemplated that the discharge of a school board treasurer could be given by the State Auditor, any more than it could be contemplated that such a discharge could be obtained from the school board of a different or neighboring parish.

"It follows, on the contrary, as a corollary from the main proposition that a discharge for State money must emanate from the State Auditor, guided by the laws governing such cases; that a discharge for parish funds must be issued by the police jury in conformity with law, and that a discharge for school money must be granted by the school board of the parish, in accordance with the powers conferred to it by law. And that the discharge, in either case, must appear of record in the proper office, must be of easy access to the public, and susceptible of being produced without delay, when needed. * * *

"The framers of the Constitution, in adopting this ordinance [Article 171 of the Constitution of 1879], understood that the certificate of fidelity to be obtained by the officer, must emanate from the body to whom he is accountable, to whom he must primarily and in due time present his accounts for examination and approval, and that the only issue to be presented to the courts would be the existence, or perhaps the validity of the discharge."

The court reversed its former ruling and held that, since the defendant did not have the proper "discharge" from the school board, to which body he was directly responsible for all funds entrusted to him for its benefit, he was not eligible to hold the office of sheriff and ex officio tax collector.

In the case at bar, the trial judge held that, since Sheriff Edwards had a quietus from the State Auditor for each year, showing that he had settled in full with the State Treasurer for all "State Taxes" and licenses due the State, the State is estopped from calling upon him now to make settlement for such other funds as he may not have properly accounted for and such as he may have misused or misappropriated.

 The Echeveria case does not support the trial court's ruling. A quietus, or discharge, issued by the State Auditor emanates from the State alone and relates only to amounts due the State. According to the ruling in the Echeveria case, the State Auditor is without power or authority to make settlement with a tax collector or a parish treasurer for amounts which the latter may be due a school board; from which it follows that the State Auditor cannot make a settlement with a tax collector for amounts due the parish or the drainage districts. Clearly, therefore a quietus emanating from the State alone could not discharge a tax collector from the duty of accounting for sums other than those due the State.

The court cited two other cases: State ex rel. Miller v. Reid, 45 La.Ann. 162, 12 So. 189, 195, and State ex rel. Stewart v. Reid, 122 La. 590, 47 So. 912, 914.

Each of these cases, like the Echeveria case, was a suit to test the eligibility of a sheriff and ex·officio tax collector to hold office, and in each case it was alleged that the sheriff was ineligible because he was a defaulter. In the first Reid case, it was found that the sheriff during a former term of office had been negligent in his duties and had not collected all amounts which he should have collected, but had in fact settled for such amounts as he had collected. The court said that "The constitutional fiat of ineligibility is not aimed at *negligence,* but at defalcation in office", and held that, since the sheriff had accounted for all sums collected by him, he was eligible to hold the office.

In the second Reid case, it appeared that defendant had previously been found delinquent in his settlements, but that his bondsmen had settled with the State in full for all the amounts due. In the course of its opinion the court said:

"The defendant having paid all that he owed both to the state and to the sureties on his bond, it remains for us to decide the effect that such payment has on his tenure at this time."

The Auditor did not issue a quietus to the defendant, but, in a letter to defendant regarding payments which had been made, the Auditor stated that "These payments close your account, and you are now entitled to a quietus, which will be forwarded in due course." But the quietus did not follow, presumably, said the court, because the payments were made by the bondsmen and it did not appear that the defendant had settled with his sureties.

The court held that under the circumstances the defendant was not ineligible.

■ Counsel for plaintiffs insist that we pass upon each of the exceptions, and other pleas filed by the defendants. Since the trial judge specifically refrained from passing on these exceptions, we cannot do so.

In the case of Gordon v. Business Men's Racing Ass'n, 140 La. 674, 73 So. 768, this court said:

"Exceptions of no cause or right of action and of estoppel were filed. After trial of these exceptions, the trial judge sustained that of no cause or right of action, and refrained from passing upon that of estoppel. This last exception, not having been passed on below, cannot be considered by this court."

. The reason for the ruling is, of course, that the Supreme Court has appellate but not original jurisdiction, except in certain cases specifically provided for by the Constitution. If we should pass upon the exceptions and other pleas in this case, our judgment would not be one reviewing a judgment of the lower court, but would be the rendition of an original judgment.

The Courts of Appeal have consistently followed this rule. Mower v. Barrow, 16 La.App. 227, 133 So. 782; Caillouet & Caillouet v. Bouvier, 17 La.App. 41, 135 So. 273; O'Sullivan v. Knop, La.App., 198 So. 191.

■ The general rule was well expressed by the Orleans Court of Appeal in the case of Dragon et al. v. Ansardi, 18 La. App. 530, 137 So. 586, 588, where the court

stated: "There can be no doubt that an appellate court may not consider any question which has not been first determined by the court of original jurisdiction."

In the case of Wilkinson v. Macheca, 158 La. 183, 103 So. 733, the court on rehearing did pass on certain exceptions which were not passed on by the trial court. But in that case the appellee joined in the appeal and asked the court to determine the pleas and exceptions which were not ruled on by the court below.

For the reasons assigned, the judgment appealed from is reversed, the plea of estoppel is overruled and the case is remanded to be proceeded with according to law; the costs of appeal to be paid by the appellee, and all other costs to await final results.

PONDER, J., recused.