175 So.2d 288

**CITIES SERVICE OIL COMPANY**

**v.**

**O. B. CARTER, Sheriff and Tax Collector Cameron Parish.**

**No. 47550.**

May 3, 1965.

Rehearing Denied June 7, 1965.

.G. Allen Kimball, Lake Charles, for plaintiff-appellant.

Frank T. Salter, Jr., Dist. Atty., J. B. Jones, Jr., Asst. Dist. Atty., for defendant-appellee.

SUMMERS, Justice.

This suit is by Cities Service Oil Company, a property taxpayer within the Hackberry Recreation District of Cameron Parish, against the sheriff of that parish for

the refund of taxes paid under protest and allegedly levied in violation of the due process provisions of the Federal and State Constitutions.

The maintenance tax in question was authorized by election within the Hackberry Recreation District on September 17, 1960.

Originally plaintiff and others intervened in a suit entitled Thibodeaux, et al v. Comeaux, et al, 243 La. 468, 145 So.2d 1, instituted on November 8, 1960 by thirty-seven qualified voters and property tax-payers within the Hackberry Recreation District against the commissioners of the district. In that suit an injunction was sought to prohibit the issuance or selling of bonds, or the assessment or collection of any taxes by that body, based upon the contention that the district was not validly formed. The suit was unsuccessful (See 243 La. 468, 145 So.2d 1) and became final after denial of certiorari by the United States Supreme Court on February 18, 1963 (372 U.S. 914, 83 S.Ct. 729, 9 L.Ed.2d 721).

Because the Thibodeaux litigation had questioned the validity of the proceedings creating the district, the bonds to finance the construction of the facilities were not authorized to be issued until April 23, 1963,

some two months after the action of the United States Supreme Court which made the unsuccessful Thibodeaux suit final. Then on June 26, 1963 a site for the recreation facilities was acquired and the bonds were sold and delivered to the purchasers on June 28, 1963. A few days later the construction was begun. A director was employed by the district on February 15, 1964. It was not until April 1964 that a limited use was made of the incompleted facilities. Construction was finally completed and the facilities were put into full operation by formal dedication on May 30, 1964.

While the Thibodeaux suit was pending, the Hackberry Recreation District levied the four-mill maintenance tax in question here in June 1961. Plaintiff paid the tax under protest and instituted the present suit on December 8, 1961, seeking a refund under rights accorded by LSA–R.S. 47:2110. Even though the Thibodeaux suit was still pending at that time, the commissioners again levied the four-mill tax for the year 1962, which plaintiff also paid under protest.[1]

Plaintiff's suit is based upon the proposition that the commissioners of the Hackberry Recreation District were without au-

1. Plaintiff's brief represents that the tax for 1963 was paid without protest since it appeared the facilities would be completed and put into operation during the ensuing year. Thus plaintiff's position was that it was reasonable to anticipate during 1963 that funds would be needed by the district for maintenance and operations during the year 1964; whereas, in contrast, it was unreasonable to levy in 1961 and 1962 when no facilities could come into being on which the maintenance and operation expenditure could be made in the year ensuing after those levies.

thority to levy a tax for the maintenance and operation of facilities which did not exist and could not be brought into existence and put into operation within the year following the levy. To do so, they allege, would constitute the taking of property without due process of law, inasmuch as the illegal collection of a tax is a denial of due process and equal protection of the laws under both the Federal and State Constitutions. Norwood v. Baker, 172 U.S. 269, 19 S.Ct. 187, 43 L.Ed. 443 (1898); Bunkie Brick Works, Ltd. v. Police Jury of Avoyelles, 113 La. 1062, 37 So. 970 (1905); Wight v. Police Jury, 5 Cir., 264 F. 705 (1919).

Although admitting that plaintiff had paid the 1961 tax under protest and that no bonds had been sold or facilities yet acquired at the time of filing his answer on April 16, 1963, defendant takes the position that the levy was proper, but, even if it were not, plaintiff was estopped from claiming the tax refund because the Thibodeaux suit, in which plaintiff intervened as a party plaintiff, wrongfully prevented any sale of bonds or the acquisition of any facilities.

The trial court, without passing on the plea of estoppel, rendered judgment rejecting plaintiff's demands. That court was of the opinion that there was no constitutional or statutory limitation, either express or implied, as to when and for what the special tax should be spent, provided the tax money was held in trust and expended only for maintenance and operation of the recreation facilities in the district.

■■■ The Louisiana constitution (Article XIV, Section 14d–4, LSA) grants to the legislature the right to create recreation districts. Under this authority it may levy taxes "for the purpose of maintaining and operating the district's recreational facilities." This tax may not exceed five mills on the dollar in any one year under the provisions of Article X, Section 10 of the constitution.

Enabling legislation (LSA–R.S. 33:4566) permits recreation districts to levy "special maintenance taxes" as authorized by the constitution and laws of the State.

On the basis of the foregoing constitutional and legislative enactments the following proposition, which forms the basis of the contested levy, was voted upon and approved by the qualified electors of the Hackberry Recreation District:

"B. Proposition to levy a four (4) mill tax on all the property subject to State taxation in the Hackberry Recreation District for the period of ten (10) years, commencing with the year 1961, *for the purpose of maintaining and operating the District's recreation facilities.*" (Emphasis added.)

The explicit language of the emphasized phrase in the proposition leaves no doubt that the levy can only be for the purpose

of maintenance and operation. This, and the quoted constitutional and statutory language, we find, clearly contemplates as a condition precedent to any levy that there will be a facility to maintain and operate in the year ensuing after the levy. Thereby the right of the taxing authority is limited to annual levies for maintenance and operation expenses to be incurred during the year following the levy, with the further restriction that the tax cannot be imposed for a period exceeding ten years. It is true that the proposition voted on recites that the tax was to commence in 1961, but this presupposes that the condition is met that there is a facility to maintain and operate. This result is obvious for it cannot plausibly be contended that the authorization would permit the levy each year during the ten-year period if the facility to be maintained and operated existed only during seven years, or six, or less.

There is no rectitude in the action of this public body levying a tax for two years (1961 and 1962) for the purpose of maintaining and operating a facility which did not exist and consequently could not be maintained or operated. Especially is this true when the levy for 1963 was available in ample time (January 1964) to cover any maintenance or operation needs after the facility came into existence in 1964. Under the circumstances it was unreasonable for the commissioners to fail to anticipate that the Thibodeaux suit would effectively prevent the expenditure of funds until that suit was final. Prudence dictated that they assume the litigants would resort to the appellate courts and a cursory inquiry would have revealed that the matter could not have been terminated much sooner than it was.

What we find the constitutional and legislative enactments permit, and what we find the people of the Hackberry Recreation District authorized by the election, is an expenditure for maintenance and operation not to exceed four mills each year while the facility was in existence during the ten-year period, provided there was a need for the money for that purpose. Such a levy should be based upon estimates made in keeping with sound business practices with due regard for the trust involved in the expenditure of public money.

LSA–R.S. 39:704 prohibits the use of special tax proceeds for any purpose not associated with the objects and purposes for which the tax is voted. That statute reads:

"The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied and shall from year to year as collected be kept separate and used for no other purpose than the purpose for which the tax was voted."

Under this legislative injunction if the tax proceeds cannot be used for paying mainte-

nance and operation expenses in the ensuing year the proceeds are not being used to accomplish the objects and purposes of the levy.

This does not mean that a slight variation between the levy and expenditure of funds for the maintenance and operation of the recreation district made in good faith ought to be sufficient to sustain objections to the tax. People ex rel. Toman v. Signode Steel Strapping Co., 380 Ill. 633, 44 N.E.2d 555 (1942).

This case, however, does not fall within the latitude which the law permits. Here the levy for maintenance and operations during 1961 and 1962 was a levy for a purpose which could not be fulfilled in the slightest degree as there was no recreation facility to maintain in those two years; the only result of these untimely levies was to accumulate an unnecessary surplus. By their action the commissioners deprived the taxpayers of the use of these funds which became an idle surplus in the treasury of the recreation district. This was an abuse of the discretion vested in the commissioners. An authorization to levy for maintenance and operations does not contemplate an unnecessary accumulation of funds for possible future needs. People ex rel. Brenza v. Morrison Hotel Corp., 4 Ill.2d 542, 123 N.E.2d 488 (1954); People ex rel. Toman v. Signode Steel Strapping Co., supra; 3 Yokley, Municipal Corporations, Sec. 543 (1958).

Taxes are levied because they are necessary to defray the expenses of government and not for the purpose of enriching the public treasury. Taxing authorities, therefore, will not be permitted to levy taxes faster than they are likely to be needed. An unnecessary accumulation of money in the public treasury is unjust, impolitic and against the policy of the law. People ex rel. Kramer v. Chicago, Burlington & Quincy R. Co., 8 Ill.2d 382, 134 N.E.2d 335 (1956); People ex rel. Harding v. Chicago & N. W. Ry. Co., 331 Ill. 544, 163 N.E. 355 (1928); People ex rel. Stevenson v. Atchison, T. & S. F. Ry. Co., 261 Ill. 33, 103 N.E. 614 (1913); 3 Yokley, Municipal Corporations, § 543 (1958); 84 C.J.S. Taxation § 352c(3).

This court has adhered to the fundamental legal tenet that public bodies "have no warrant to collect by way of taxation any greater amount than is necessary for their needs and thereby build up an unnecessary surplus." Ascension Red Cypress Co. v. New River Drainage District, 175 La. 300, 143 So. 270, 272 (1932).

Other courts have recognized that taxes should not be levied simply to enhance the public treasury for the unnecessary accumulation of funds in the treasury "is unjust to the people, depriving them of the use of the money for a considerable period, and is also unwise, as it may tempt those having the custody of the funds to use them improperly." People ex rel. Bear, County

Collector v. Illinois Central R. Co., 266 Ill. 126, 107 N.E. 223, 226 (1914).

There are no decisions of our courts involving the precise situation before us. However, the facts of this case may be applied to the decisions of this court holding that a tax authorized for the retirement of bonds cannot be levied until the bonds are sold. Just as a tax may not be levied to retire bonds which have not been sold, a tax may not be levied to maintain and operate a facility which has no existence. Mouton v. City of Lafayette, 178 La. 1041, 152 So. 751 (1934); Kansas City Southern Ry. Co. v. Hendricks, 150 La. 134, 90 So. 545 (1922).

 Defendant's reliance upon the doctrine of estoppel to deny plaintiff's entitlement to the tax refund is based upon the premise that plaintiff was party to the Thibodeaux suit contesting the validity of the creation of the recreation district. As a consequence of plaintiff's participation in that suit, which he considers wrongful conduct, defendant asserts that the bonds of the district could not be sold and the recreation facilities could not be constructed; therefore, because plaintiff was a party to wrongful conduct, the suit which caused the delay, plaintiff is estopped from contesting the validity of the levy during the pendency of that suit.

In answer, plaintiff's position in this court is that, inasmuch as the trial court

did not pass upon the issue of estoppel, the issue cannot be adjudicated by this court. Plaintiff relies upon State ex rel. Jones v. Edwards, 203 La. 1039, 14 So.2d 829 (1943) and Gordon v. Business Men's Racing Association, 140 La. 674, 73 So. 768 (1916). Alternatively, plaintiff takes the position that the plea of estoppel is without merit.

The contention that this court cannot pass upon the plea of estoppel is not well-founded. Effective January 1, 1961 Article 2164 of the LSA–Code of Civil Procedure abolished the "theory of the case" doctrine in this State so that hereafter, it is ordained, an appellate court "shall render any judgment which is just, legal, and proper upon the record on appeal." All of the facts which form the basis of this plea of estoppel are in the record and are substantially undisputed. Clearly, in this instance, no useful purpose would be served by a remand and defendant is entitled to an adjudication of his contention.

However, we do not find the plea of estoppel to be meritorious. Defendant's contention is incorrect that plaintiff has committed a wrongful act which may form the basis of estoppel by exercising its right to seek judicial determination of the legality of the creation of the recreation district. Such a contention is inconsistent with fundamental constitutional guarantees of due process and availability of the courts to citizens seeking reparation of wrongs. It would frustrate that part of our constitu-

tion which guarantees access to our courts if at the same time the law penalized a litigant for using them. La.Const. of 1921 art. 1, § 6; Eaton v. Eaton, 227 La. 992, 81 So. 2d 371 (1955); Tremont Lumber Co. v. Police Jury of Winn Parish, 164 La. 257, 113 So. 839 (1927).

For the reasons assigned, the judgment of the district court is reversed and set aside and judgment is rendered herein decreeing the levy of the four-mill maintenance tax by the Hackberry Recreation District for the years 1961 and 1962 to be null, void and without effect and plaintiff is entitled to the refund as prayed for. Defendant to pay all costs.